# Illinois Official Reports

## Appellate Court

---

*People v. Short*, 2014 IL App (1st) 121262

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES SHORT, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1262 |
| Filed<br>Rehearing denied<br>Modified upon<br>denial of rehearing | October 29, 2014<br>November 26, 2014<br><br>December 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for attempted first degree murder, unlawful possession of a firearm by a gang member and aggravated unlawful use of a weapon, defendant's guilty pleas to unlawful possession of a firearm by a gang member and aggravated unlawful use of a weapon and his conviction by a jury for aggravated battery with a firearm were upheld over his contentions, *inter alia*, that the jury was tainted when the trial judge posed questions about defendant's alleged gang membership during *voir dire* shortly before allowing defendant to plead guilty to unlawful possession of a firearm by a gang member, that his counsel was ineffective in adopting a strategy that allowed the prospective jurors to be questioned about evidence of gang membership, and that a *per se* conflict of interest arose on the part of his counsel when counsel was allowed to continue to represent defendant after filing a motion for a new trial alleging he was ineffective. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-11210; the Hon. Brian Flaherty, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Michael J. Pelletier and Jessica D. Pamon, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan Frazier, and Lisanne Pugliese, Assistant State's Attorneys, of counsel), for the People.

Panel    JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Lavin and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant James Short was charged with attempted first degree murder and three other offenses stemming from his shooting of Eric Felters. After jury selection, but before trial, Short pled guilty in an open plea to two charges: unlawful possession of a firearm by a gang member and aggravated unlawful use of a weapon. The jury acquitted Short of attempted first degree murder, but found him guilty of aggravated battery with a firearm.

¶ 2    Short claims the jury became tainted by the trial judge's admonishment to the venire about Short's alleged gang membership and about the two counts to which he pled guilty. Short also contends the trial court erred in denying his request to corroborate his trial testimony with his prior consistent statement to rebut the State's suggestion that his self-defense claim was a recent fabrication. Lastly, Short argues he received ineffective assistance because a *per se* conflict of interest arose when his trial counsel argued his own ineffectiveness in the motion for a new trial. Short asks this court to remand for appointment of new counsel to represent him on his motion for a new trial or, alternatively, remand for an inquiry as provided in *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 3    We find no error. Short received a fair trial before an impartial jury with effective assistance of counsel. We affirm.

¶ 4                                BACKGROUND
¶ 5                            Pretrial Proceedings
¶ 6    Before trial, defense counsel filed a motion *in limine* asking the State be barred from presenting gang evidence at trial. Defense counsel argued that because the issue of Short's alleged gang membership was only relevant to one charge–unlawful possession of a firearm by a gang member–Short should be allowed to "concede on that charge to take it to a bench trial." The trial judge asked counsel whether "concede" meant pleading guilty or having a bench trial, to which defense counsel responded, "my preference would be to waive jury on that."

¶ 7    The court denied defense counsel's request for a bench trial on the unlawful possession of a firearm by a gang member charge and held that because Short's alleged gang membership was relevant to the charge, gang evidence would be allowed.

¶ 8    At the beginning of *voir dire*, the court read all four counts of the indictment, including aggravated unlawful use of a weapon and the count alleging Short was a member of a street gang. With defense counsel's agreement, the court: (i) informed the venire during *voir dire* that there may be evidence presented at trial regarding gang membership; and (ii) asked each potential juror whether the fact that defendant was an alleged gang member would prevent him or her from giving Short a fair trial.

¶ 9    After the jury was selected, outside the presence of the jury, defense counsel asked the court to allow Short to plead guilty to unlawful possession of a firearm by a gang member and aggravated unlawful use of a weapon. The court granted the motion. At this point, defense counsel moved to have the venire dismissed. Counsel argued that informing the jurors of Short's alleged gang membership tainted them. The trial judge denied counsel's request, but stated he would give the jury a limiting instruction. (No instruction appears to have been given.) The trial judge then reread to the jury the charges defendant faced–attempted first degree murder and aggravated battery with a firearm. The court informed the jury it would no longer hear gang evidence and, specifically, evidence of Short's alleged gang membership. That was the extent of the court's directions on the issue.

¶ 10                                    Trial

¶ 11    The State presented the eyewitness testimony of the intended victim, Eric Felters, and his friend, Brandon Brooks. The defense presented the testimony of Short, Jeffrey Dawkins, and Lauren Falkner, Brooks' former girlfriend.

¶ 12                                State's Case

¶ 13                                Eric Felters

¶ 14    The victim, Eric Felters testified that he went to a party at his girlfriend Samantha Mack's house around 10 p.m. on May 20, 2010. Felters knew most of the 50 to 75 attendees; the only people unfamiliar to him were Short and Dawkins. Felters testified he knew Donovan Luster by face. (Short, Dawkins and Luster arrived at the party together in a dark BMW sports utility vehicle (SUV).)

¶ 15    Felters left the party when the police shut it down around midnight, and he walked across the street to his car. As he stood next to his car, a dark-colored SUV pulled up next to him with its windows down and loud music playing. There were no cars in front of it blocking its path. The people inside the SUV were trying to get his attention with derogatory comments. He turned to face the passenger window of the SUV and a verbal altercation ensued with Dawkins, the front-seat passenger. (Luster was driving and Short was sitting in the backseat.) Their argument escalated. Felters and Dawkins threw punches at each other through the window four or five times. Felters claimed he did not have a weapon. During the altercation, no one surrounded the SUV to help him or to fight Short and his friends.

¶ 16    Less than a minute into Felters' fight with Dawkins, Felters saw a gun come from the backseat through the passenger window and fire one shot. The bullet struck Felters' right forearm and then entered the right side of his chest, piercing the right lung. Felters ran for

- 3 -

assistance, eventually collapsing in the driveway of the party house. An ambulance arrived and took Felters to the hospital, where he stayed for two weeks.

¶ 17                                    Brandon Brooks

¶ 18        Brooks testified he had been friends with Felters since childhood and that he, Felters and Mack attended school together. Luster, Dawkins, and Short did not attend the same school, but Brooks knew them from the neighborhood.

¶ 19        Brooks recalled that after the police broke up the party, as he walked toward his car, he saw a dark SUV pull up alongside Felters' car with Felters in the driver's seat. Brooks had seen Dawkins get in the front passenger seat of the SUV and Short get in the back. Brooks testified consistently with Felters' account about the fight. Brooks did not see anything in Felters' hands during the altercation or later when Felters was on the ground injured.

¶ 20        During cross-examination, Brooks testified he was able to observe the incident even though he was 30 feet away and the SUV's headlights pointed in his direction. Brooks never told Lauren Falkner that he and his friends were going to fight Short and his friends. He also denied knowing Jasmine Evans or instructing her to use her car to block the path of the SUV after the party. (Falkner testified that Brooks knew Evans because Evans dated Brooks' brother while Falkner and Brooks were dating and the four of them would go out together.)

¶ 21                                   Police Testimony

¶ 22        Officer Daniel Vanoskey testified he was on routine patrol when he came upon a party near 5746 Kathryn Lane, Matteson, on the night of the shooting. While on foot with Officer Roger Radtke, who arrived to assist, they heard a gunshot. Officer Radtke ran in the direction of the shot.

¶ 23        Sergeant Robert Debeikis testified that on the night of the shooting, he received calls of a disturbance concerning the party. When Sergeant Debeikis arrived on the scene, the party was causing traffic congestion and a lot of people were standing in the street, so he told Mack to shut down the party.

¶ 24        While Sergeant Debeikis was clearing people out of the house, he received a call that someone had been shot. He ran outside and saw Felters bleeding, lying on the ground in front of his patrol car. He heard people yelling that the shooter was fleeing in a SUV. He radioed that information to the other officers in the area. He then got in his patrol car and chased the SUV.

¶ 25        Over the police radio, Officer Vanoskey heard that a dark-colored SUV involved in the shooting was fleeing toward his location. He stood in the middle of the road with his gun drawn and yelled for the SUV to stop. The SUV, containing three African American males, stopped 10 feet in front of him.

¶ 26        Sergeant Debeikis arrived and assisted Officer Vanoskey. The officers placed Luster, Dawkins and Short in a police car and corralled the partiers back into the house so they could secure the area and interview witnesses. No weapons were recovered from the scene. The SUV was towed to the police station and processed by an evidence technician. The police recovered a loaded revolver with four live rounds and one spent casing from underneath the backseat.

¶ 27        Detective Jeremy Sims testified that around 1 a.m. that night, he went to the area in response to the shooting. When he arrived, he spoke with a witness who lived in the area. Later, he went back to the station and secured the SUV. He collected evidence from Short,

Luster and Dawkins and conducted a gunshot residue kit on all three men. He wrote a police report about the incident.

¶ 28                                                   Defense Case

¶ 29        Nineteen-year-old Short testified he went to the party at Mack's house with his friends Dawkins and Luster. Short knew Mack because they associated with the same group and saw each other at different events. Short was not friends with Felters, but knew he was Mack's boyfriend.

¶ 30        Before the party, Short drove to Dawkins' house and waited there for Luster to arrive. When Luster arrived, Short took a gun from inside his car and put it under the backseat of Luster's BMW SUV. Short testified he brought the gun along that day for protection because he did not know where they were going after the party and sometimes he could be in "rough areas." Luster and Dawkins testified they did not know Short put the gun underneath the backseat.

¶ 31        Short testified that when they arrived at the party, he left the gun inside the SUV. Short saw Felters and Brooks at Mack's house, but nothing unusual happened at the party. After the police broke up the party and everyone began to leave, traffic on the street became congested.

¶ 32        The men got back into Luster's SUV; Luster as the driver, Dawkins in the front passenger seat and Short in the back. The front windows were rolled down. Short put the gun in his pocket, but testified he had no intention of using it.

¶ 33        Short testified that as Luster tried to pull out of the parking space, Jasmine Evans pulled her car in front of his, blocking in his SUV. Felters approached the passenger side of Luster's SUV and started hitting Dawkins with a dark object that looked like brass knuckles. After five or six blows, Dawkins' body slumped and appeared unresponsive. A group of men then gathered on the driver's side of the SUV. The men opened Luster's door and tried to grab him. Short testified that at this point, he feared for his own life and the lives of his friends.

¶ 34        Felters continued attacking Dawkins, but Dawkins did not fight back. Short testified he then pulled out his gun and shot in Felters' direction to scare him and the others away. Following the shot, the men scattered. The car blocking the SUV moved and Luster was able to pull out and turn around in the cul-de-sac. As Luster drove back down the street, the police stopped them.

¶ 35        Short testified he did not know Felters had been shot until he heard everyone screaming and saw an ambulance. Short was arrested and taken to the police station. At the station, he talked with Detective Sims and Assistant State's Attorney (ASA) Pease-Harkin. Short testified he told ASA Pease-Harkin what had happened and, specifically, that Felters had a weapon and a group of men surrounded their car just before the shooting.

¶ 36                                        Short's Handwritten Statement

¶ 37        ASA Pease-Harkin testified she spoke with Short at the police station shortly after his arrest and that he agreed to give a signed handwritten statement. ASA Pease-Harkin read Short's statement to the jury.

¶ 38        In his statement, Short explained the events leading up to the shooting. Short claimed that after Felters struck Dawkins, he took out his gun, extended his arm between the right side of

the passenger seat and the frame of the car and shot at Felters from four feet away. Short claimed that both Luster and Dawkins knew he had a gun.

¶ 39    ASA Pease-Harkin denied that Short told her that Felters had a weapon or that Felters hit Dawkins several times. In his statement, Short never mentioned that a group of men surrounded the SUV before the shooting or that he feared for his life and the lives of his friends.

¶ 40    Short testified he told ASA Pease-Harkin and Detective Sims that Felters had a weapon and that a group of men surrounded the SUV before the shooting, but ASA Pease-Harkin did not include those details in his statement.

¶ 41                                    Jeffrey Dawkins

¶ 42    Dawkins testified consistently with Short. He recalled they arrived at Mack's party around 9:30 or 10 p.m. Dawkins knew of Felters and Brooks, but they were not friends. Other than greeting them, Dawkins testified he did not speak to Felters or Brooks at the party. Dawkins testified he did notice something unusual–at some point during the party, Felters, Brooks and their friends went to a back room, leaving Dawkins, Short and Luster in the front of the house with the ladies.

¶ 43    Dawkins testified that after the police broke up the party, he went outside, where he noticed a group of six or seven men that had not been at the party. Dawkins recalled getting into Luster's SUV and having it blocked by Evans' car. Dawkins testified, "Out of nowhere, I felt like a brass–a force, an object hit my face." He testified he felt as though he was being punched with "brute force *** with a solid object, repeatedly, repeatedly, repeatedly." Dawkins did not see who was attacking him or what kind of object the person was using. Dawkins was hit several times in his face and neck. The individual attacking Dawkins reached in through the window and tried to pull Dawkins out of the SUV. At trial, Dawkins identified a photograph as showing the injuries he received that night: a swollen cheek, lip and eyelid.

¶ 44    Dawkins testified that as he was attacked, a group of men gathered around the driver's side door of the SUV, opened it and tried to pull Luster out. At that point, Dawkins heard a gunshot and the attack stopped. Dawkins believed the shot had been fired from outside the SUV. He did not know Short had a gun.

¶ 45                                    Lauren Falkner

¶ 46    Falkner testified she had dated Brooks two years before and that she was at Mack's party. Falkner knew Short through mutual friends. At the party, Brooks told her that he and his friends were going to "get it cracking" with Short and his friends, which she explained meant they were going to start a fight.

¶ 47    The day after the shooting, Falkner voluntarily went to the police station and told a detective what she saw and heard at the party, including Brooks' statement.

¶ 48    During rebuttal, Detective Tanya Eskridge testified she interviewed Falkner at the police station the day after the shooting, but wrote no notes from the interview. Detective Eskridge testified Falkner did not tell her she spoke with Brooks at the party or that Brooks told her he was going to fight with Short and his friends.

## Defense Motions

### Motion to Admit Prior Consistent Statement

After Short testified, defense counsel moved to admit Short's prior consistent statement to Detective Sims. Counsel informed the court he wished to recall Detective Sims to impeach ASA Pease-Harkin's testimony that Short never told her that Felters had a weapon. Counsel proffered statements from Detective Sims' police report that Short told him he shot Felters in self-defense, that Felters repeatedly struck Dawkins, and that there were several males surrounding the SUV before the shooting. The State did not object to the proffer. Defense counsel argued Detective Sims' testimony should be allowed to rebut the State's claim that Short had recently fabricated his self-defense claim. The court denied the motion holding there was no foundation laid for the recent fabrication.

### Motion for Mistrial

Before completing the defense, counsel argued a motion for a mistrial alleging the jury was prejudiced because it was repeatedly told during *voir dire* that Short was an alleged gang member and that he had been charged with possession of a firearm by a street gang member and aggravated unlawful use of a weapon, two charges he pled guilty to. Counsel argued the bell "could not be unrung" and the jurors would likely speculate as to why those charges were removed from their consideration.

The court denied the motion finding proper the admonishments that there would be no evidence of gangs or gang membership and that the only evidence the jury could consider was that presented live or through stipulation. The court offered to give the jury an additional instruction from the parties. (It appears none was given.)

### Closing Arguments

In closing, the State argued Short did not act in self-defense or defense of his friends when he shot Felters. The State contended Short's handwritten statement accurately described the incident as he recalled it to ASA Pease-Harkin. The State argued that if Short had told ASA Pease-Harkin that Felters had a weapon that night, she would have included it in his statement. In rebuttal, the State argued, "[Short] was telling the [S]tate's [A]ttorney what happened. And this whole thing about self-defense is nonsense, and it is something the defendant had to say now because he is sitting right there (indicating)."

### Jury Deliberations

The jury acquitted Short of attempted first degree murder, finding him guilty only of aggravated battery with a firearm.

### Posttrial Proceedings

Defense counsel moved for a new trial, alleging the trial court erred by denying Short's motion *in limine* to bar gang evidence and his request to bifurcate the trial and either waive jury on the two gun counts or, alternatively, plead guilty on the two gun counts. Defense counsel also alleged his own ineffective assistance of counsel, stating he "was ineffective for not objecting to the Court's inquiry into the venire's possible prejudice based on allegations of gang membership." Defense counsel argued the mention of potential gang allegations during

*voir dire* tainted the jury and the trial court erred when it denied Short's motion to dismiss the venire. Counsel alleged that when Short pled guilty to the two gun counts, the venire should have been discharged because it had already heard Short was charged with those counts.

¶ 61    Without further inquiry into counsel's allegation of ineffectiveness, the court denied the motion.

¶ 62    The court sentenced Short to 11 years' imprisonment for aggravated battery with a firearm and 5 years for the possession of a firearm by a gang member conviction to which Short had pled guilty. Short's aggravated unlawful use of a weapon conviction merged with his possession of a firearm by a gang member conviction.

¶ 63                                   ANALYSIS
¶ 64                                 Gang Evidence

¶ 65    Short claims he was deprived of a fair and impartial jury due to the jurors being tainted when the court questioned them during *voir dire* regarding his alleged gang membership. Soon after that line of questioning, Short pled guilty to the gang-related charge and no gang evidence was ever introduced at trial.

¶ 66    Short further contends the jury was tainted when two of the charges–unlawful possession of a firearm by a gang member and aggravated unlawful use of a weapon–were read to the jury before *voir dire* and then removed from the jury's consideration, without explanation, after Short pled guilty. Short contends the trial court misunderstood the nature of his counsel's pretrial motion. He argues counsel was requesting a bench trial or that he be allowed to plead guilty to the gang charge before *voir dire* to prevent the jury from being informed of the two charges and Short's alleged gang membership.

¶ 67    Short argues that the jury should not have been informed of his alleged status as a gang member and because it was, he was prejudiced. According to Short, the only relevance of the gang membership involved an element of the unlawful possession of a firearm by a gang member, a charge to which he pled guilty.

¶ 68    Short argues that in denying his request to bifurcate the trial, the court erred by not ruling on counsel's alternative request that he be allowed to plead guilty to the unlawful possession of a firearm by a gang member charge. Short contends he wanted to plead guilty at this point in the proceedings to prevent the potential jurors from hearing about his alleged gang membership.

¶ 69    Short argues that even though the court told the jurors, after he had pled guilty, that they would no longer hear any evidence that he was a gang member, "the bell could not be unrung on this prejudicial information."

¶ 70    The scope of *voir dire* lies within the trial court's discretion. "An abuse of that discretion will be found 'only if, after review of the record, it is determined that the conduct of the court thwarted the selection of an impartial jury.' " *People v. Bowman*, 325 Ill. App. 3d 411, 425 (2001) (quoting *People v. Williams*, 164 Ill. 2d 1, 16 (1994)).

¶ 71    Before *voir dire*, defense counsel moved to bar gang evidence at trial:

> "DEFENSE COUNSEL: There's no gang evidence as motive in this case and it [will] only be probative of that one element of that one charge. I am prepared to concede on that charge to take it to a bench trial on that charge and even–

THE COURT: When you concede, you mean waive jury not concede plea guilty? I mean just so we're clear.

DEFENSE COUNSEL: My preference would be to waive jury on that and let Your Honor decide however I suppose it were an–

THE COURT: I'm not trying to force your hand one way or the other, trust me. I just want to make sure–well, I kind of knew what you meant but I want to make sure I know what concede means.

DEFENSE COUNSEL: My suggestion is we waive jury on that count. We present that count to the Court and then that way, the State will have no purpose for admitting gang evidence because it doesn't go to any other element of any other charged crimes."

The trial court denied defense counsel's motion *in limine*, finding a good-faith basis existed for the introduction of the gang evidence because of the charge of unlawful possession of a firearm by a gang member. The court further stated, "And your request to basically bifurcate the trial to a bench trial and not a jury trial will be denied." The court stated it would instruct the venire, with defense counsel's consent:

"During the course of the trial, you may hear evidence of gang membership. Would the fact that the accused is allegedly a member of a street gang prevent you from giving him a fair and impartial trial?"

Defense counsel responded, "Yeah. I would want that."

¶ 72    During its questioning of each potential juror, the trial court asked each one, individually:

"During the course of the trial, you may hear evidence of gang membership. Would the fact that the accused is allegedly a member of a street gang prevent you from giving him a fair and impartial trial?"

Each juror indicated he or she could be fair and impartial.

¶ 73    After the jury was selected, but before trial, defense counsel renewed his objection to the admission of gang evidence. Counsel also argued that the gang related *voir dire* question called attention to the gang evidence and improperly suggested that the case was gang-related. Counsel asked the court to reconsider its denial of his motion *in limine* and to allow Short to plead guilty to unlawful possession of a weapon by a gang member.

"THE COURT: Your motion *in limine*, if I remember correctly, is to waive the jury as to that gang case.

DEFENSE COUNSEL: I didn't specify. I think orally we started talking about, and I didn't really–I think I mentioned on the record that I would be open to either a bench trial or conceding the charge completely."

The State responded that it would not be introducing evidence of gang motivation at trial because the gang evidence only related to the charge of unlawful possession of a weapon by a gang member. Defense counsel then indicated Short wished to plead guilty to two of the four charges: (1) unlawful possession of a weapon by a gang member and (2) aggravated unlawful use of a weapon. The court stated it would instruct the jury that it would not hear evidence that this was a gang-related shooting or that Short was a gang member. The court also indicated it would reread the two pending counts to the jury: attempted first degree murder and aggravated battery with a firearm.

¶ 74    At this point, defense counsel moved to dismiss the jury based on the gang-related *voir dire* question. The trial court denied counsel's motion and stated, "we will also have a limiting

instruction prepared by the parties that I will read to the jury." (It appears no instruction was given.)

¶ 75   The court accepted Short's guilty plea to unlawful possession of a weapon by a gang member and aggravated unlawful use of a weapon.

¶ 76   The jury was brought back and sworn in. The court stated, "you will not hear any evidence that this was a gang-related shooting or that the defendant is a member of any street gang." The trial judge then read the indictment charging Short with attempted first degree murder and aggravated battery with a firearm. After additional instructions, none of which concerned the earlier mention of gang evidence, the parties gave their opening statements and the trial began.

¶ 77   Before the defense presented its entire case, counsel argued a motion for a mistrial alleging the jury was prejudiced because the jurors repeatedly heard during *voir dire* that there would be allegations that Short was a gang member. The trial court denied defense counsel's motion, stating "I instructed the jury yesterday that there would be no evidence of gangs or that the defendant was a member of a street gang. I actually offered then, and you have not indicated whether or not you are going to accept it, the other instructions, basically the same thing that I told to the jury again *** put in the past tense." The defense continued presenting its case and then raised the issue again posttrial.

¶ 78   We review a claim that the trial court's actions prevented the selection of an impartial jury under an abuse of discretion standard. *People v. Strain*, 194 Ill. 2d 467, 476 (2000). The primary responsibility for initiating and conducting *voir dire* lies with the trial court; the manner and scope of that examination falls within the court's sound discretion. *People v. Wilson*, 303 Ill. App. 3d 1035, 1041-42 (1999). The "purpose of *voir dire* is to assure the selection of an impartial panel of jurors free from either bias or prejudice." *People v. Williams*, 164 Ill. 2d 1, 16 (1994); see *People v. Garstecki*, 234 Ill. 2d 430, 437-38 (2009) (explaining significance of replacement of Illinois Supreme Court Rule 234 (eff. May 1, 1997) with Illinois Supreme Court Rule 431 (eff. May 1, 1997)). Courts recognize there is a strong prejudice against gangs and gang members. "Conducting *voir dire* in gang cases presents particular challenges since gang membership is an area of potential bias." *People v. Strain*, 306 Ill. App. 3d 328, 335 (1999), *aff'd*, 194 Ill. 2d 467 (2000).

¶ 79   The State argues the jury was fair and impartial because: (1) the court admonished the jurors regarding Short's alleged gang membership and asked whether they could be fair, and they all indicated they could; (2) the jury never heard any actual gang evidence; and (3) the jury was told just before trial that it would not hear gang evidence and the indictment (which contained the gang charge) was not evidence. We agree.

¶ 80   The State maintains the trial court did not abuse its discretion in failing to dismiss the jury and even if it did, the error was harmless because Short was not prejudiced. The State cites *People v. Thompson*, 2013 IL App (1st) 113105, for support.

¶ 81   In *Thompson*, the defendant claimed the trial court erred when it questioned the jury during *voir dire* about gang evidence, even though the trial court had already granted the defendant's motion *in limine* barring such evidence. *Thompson*, 2013 IL App (1st) 113105, ¶ 106. The court instructed the entire venire:

   " 'There may be evidence in this case *** of gang membership. What I want to tell you
   *** is that gang membership in and of itself cannot be considered by you because he or

she is in a gang, that they are guilty of a crime. Does everybody understand that?' " *Id.* ¶ 107.

The potential jurors indicated they understood. *Id.* The court further instructed the venire:

" 'It is just a part of the evidence, but it is not the thing that should make you make your decision. It is another thing to consider along with all the other evidence in this case in reaching your verdict.

\* \* \*

Understand it is something that you can consider, but it is not a reason to say in and of itself, in other words, just [because] he sat down and said I am in the Insane Pastry Cooks, right, that is not enough in and of itself to convict a person.' " *Id.*

After each admonishment, the court asked the potential jurors if they understood and accepted each principal; they indicated they did. *Id.*

¶ 82    On review, we held the trial court did not err in asking the venire about the gang evidence because contrary to the defendant's argument, the trial court did not grant the defendant's motion *in limine* outright, but only granted it as it related to the State's case-in-chief, leaving "open the possibility of gang evidence becoming admissible at some point in the trial." *Id.* ¶ 109. In finding the defendant was not prejudiced by the court's comments, we found it significant that the trial judge's comments were "the only reference to gangs throughout the trial" and when specifically questioned, the potential jurors indicated they would not use evidence of gang membership as proof of guilt. *Id.* ¶ 110.

¶ 83    We find the only honest way to interpret defense counsel's oral motion is as an "either or" motion. The trial court properly asked counsel which he wanted. See *People v. Arndt*, 50 Ill. 2d 390, 395 (1972) (defendant is not entitled to bench trial on certain charges and jury trial on others). At this point in the proceedings, Short did not opt to plead guilty. Hence, the only motion before the court at that time was for the court to take the gun charge as a bench trial; that was denied. Short did not move to plead guilty until after *voir dire* was complete. Any contrary suggestion on appeal is a misstatement of the record.

¶ 84    After Short pled guilty to the gang member in possession charge, the trial judge said he would "instruct the jury that you will not hear any evidence that this was a gang-related shooting or that the defendant was a member of any street gang. And then, I will re-read the two counts that are still pending." Defense counsel responded, "That's fine, Judge." We find counsel's trial strategy left him in this position, where the jury first heard the gang membership issue and then heard that it was not an issue after all.

¶ 85    Moreover, even if we were to accept that the trial court erred, which we do not, we would still need to find that Short was prejudiced.

¶ 86    *Thompson* stands for the proposition that a defendant facing charges that require evidence of gang membership is entitled to have the jury questioned during *voir dire* in order to determine if the jury members will convict on the evidence alone or if gang membership will play a role in their decision. *Thompson*, 2013 IL App (1st) 113105, ¶¶ 108-10.

¶ 87    Following *voir dire*, the defense was satisfied that the jury members it selected would not hold any evidence of gang membership against Short. We are unpersuaded by Short's contention that after he pled guilty to the gang charge and the court advised the jury it would not hear any gang-related evidence, the jury could no longer be fair or impartial based on evidence it did not hear. Short speculates that the jury assumed he was guilty of the charges

- 11 -

that were dropped, but there is no basis for his suggestion. Equally possible is that the jury assumed the State dropped the charges because it would not be able to prove them. The jury's verdict proves there is no credible suggestion of prejudice. The fact that the jury acquitted Short of attempted first degree murder and convicted him only on the lesser charge is proof that it was unaffected by any mention of gang membership.

¶ 88    We find no error in how the court conducted *voir dire*.

### Ineffective Assistance of Counsel

¶ 90    Alternatively, Short contends his trial counsel was ineffective for failing to clarify the nature of his pretrial motion and seek a full ruling on his alternative request to plead guilty before *voir dire*. Short argues counsel's failure to do so prejudiced him by allowing the potential jurors to hear about his alleged gang membership. Short contends that if the trial court had properly understood counsel's request and granted it, the gang-related *voir dire* question would have been unnecessary.

¶ 91    Short contends his trial counsel recognized his own ineffectiveness by including the claim in the posttrial motion. Short argues that to the extent his trial counsel's "lapse" contributed to the tainting of the jury, the basis for counsel's later motion to dismiss the venire and motion for a mistrial, Short was denied his right to effective assistance of counsel. Short asks that we reverse and remand this cause for a new trial.

¶ 92    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Under *Strickland*, a defendant must show that counsel's performance was deficient and that he or she was prejudiced because of it. *Strickland*, 466 U.S. at 687. To show deficient representation, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's deficient representation, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If an ineffective assistance of counsel claim may be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697.

¶ 93    The right to effective assistance of counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). *Strickland* requires only that a defendant receive a fair trial–a trial free of errors so egregious that they probably caused the conviction. *People v. Griffin*, 178 Ill. 2d 65, 91 (1997).

¶ 94    The record shows Short was convicted and sentenced based on overwhelming evidence, not on any alleged deficiencies by his trial counsel. Thus, failing to establish he was prejudiced by counsel's choices, Short's ineffective assistance of counsel claim fails.

### Prior Consistent Statement

¶ 96    Short contends the trial court erred by precluding him from recalling Detective Sims to testify about a prior consistent statement he made after he was arrested. Short argues his prior consistent statement, recorded in Detective Sims' police report, should have been allowed to rebut the prosecution's suggestion that his self-defense claim was a recent fabrication.

¶ 97    At trial, Short claimed self-defense. He testified Felters had a weapon and repeatedly struck Dawkins, who appeared unresponsive; and that a group of men surrounded the SUV just before the shooting. Short claimed he told ASA Pease-Harkin all of these facts when she interviewed him at the police station, but she did not include them in his statement. Short called two witnesses to testify on his behalf and corroborate his self-defense theory, Dawkins and Falkner.

¶ 98    Short's statement to ASA Pease-Harkin corroborated the State's theory. In his statement, there was no mention that: (1) Short acted in self-defense; (2) Felters had a weapon; (3) Felters repeatedly hit a defenseless Dawkins; or (4) a group of men surrounded Luster's SUV during the attack. The State argued ASA Pease-Harkin had no reason to leave anything out of Short's statement.

¶ 99    Defense counsel requested that he be allowed to recall Detective Sims to ask him about Short's prior consistent statement, made shortly after his arrest. Counsel argued Short's prior consistent statement was admissible because the State's line of questioning suggested to the jury that Short's self-defense claim was a recent fabrication. The trial court ruled Short's prior consistent statement was not admissible, finding "I don't think that there is a proper foundation for recent fabrication."

¶ 100    Short argues the court erred and he should have been allowed to rehabilitate his trial testimony with his prior consistent statement because the State raised an inference that his self-defense testimony was made up for the purposes of trial.

¶ 101    The State contends Short's statement to Detective Sims constituted inadmissible hearsay. The State further contends Short's statement was inadmissible as a prior consistent statement because Short could not establish that it predated his motive to testify falsely. The State also argues the prior consistent statement would have been cumulative of Short's trial testimony and would not have changed the outcome of the case and, therefore, at most, its exclusion was harmless error.

¶ 102    Evidentiary rulings fall within the discretion of the trial court and we will not disturb the trial court's decision absent an abuse of discretion. *People v. Franklin*, 135 Ill. 2d 78, 96 (1990). Generally, a witness's testimony cannot be corroborated by proof of prior statements consistent with his or her trial testimony. *People v. Shum*, 117 Ill. 2d 317, 340 (1987). There are two exceptions to this rule, prior consistent statements admitted to rebut: (1) a charge that the witness is motivated to testify falsely or (2) a charge that the witness's testimony has recently been fabricated. *People v. Williams*, 147 Ill. 2d 173, 227 (1991). The party seeking to introduce the prior consistent statement bears the burden of establishing that the statement was made before the alleged recent fabrication or the existence of the motive to testify falsely. *People v. Mullen*, 313 Ill. App. 3d 718, 730 (2000). When these parameters have been met, the prior consistent statement may be admitted, but only for purposes of rehabilitation. *Id.*

¶ 103    We agree with the State that the timing of Short's prior consistent statement is irrelevant because Short is unable to show prejudice. Even if the court erred in failing to allow Short's prior consistent statement, its exclusion was harmless error. The evidence was substantial.

¶ 104    Moreover, any benefit that would be gained from admission of Short's prior statement would be minimal. The jury heard Dawkins testify he believed he was being hit with a "brass" object and that their vehicle had been surrounded by men before Short shot Felters. Dawkins' testimony corroborated Short's testimony that Felters had a weapon. The jury, however, also

- 13 -

heard evidence that no weapon was found at the scene and that Dawkins' injuries were not consistent with being hit with a weapon.

¶ 105    Under these circumstances, the failure to allow Short's prior consistent statement to show he had not fabricated his self-defense theory for trial was not prejudicial in light of the substantial evidence against him and the minimal benefit of this testimony. See *People v. West*, 263 Ill. App. 3d 1041, 1049 (1994).

¶ 106                                  Conflict of Interest

¶ 107    Short contends he was denied his right to effective representation on his motion for a new trial. He asks this court remand for appointment of new counsel or, at a minimum, remand for a *Krankel* hearing. Short argues a *per se* conflict of interest arose when his trial counsel, who alleged in the motion for a new trial that he was ineffective, continued to represent Short and the court did not inquire into the allegation. Short contends he was denied conflict-free representation by defense counsel's continued representation.

¶ 108    Whether an attorney labored under a conflict of interest while representing a defendant is a question of law we review *de novo*. *People v. Miller*, 199 Ill. 2d 541, 544 (2002).

¶ 109    A criminal defendant's sixth amendment constitutional right to effective assistance of counsel includes the right to conflict-free representation. *People v. Taylor*, 237 Ill. 2d 356, 374 (2010) (citing *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008)). Meaning, counsel's representation and loyalty to his or her client cannot be "diluted by conflicting interests or inconsistent obligations." *Taylor*, 237 Ill. 2d at 374. Our supreme court recognizes two categories of conflicts: *per se* conflicts and actual conflicts of interest. *Id.*

¶ 110    Short characterizes the conflict of interest as a *per se* conflict. Counsel raised the issue of his own ineffectiveness in the motion for a new trial, alleging, he "was ineffective for not objecting to the Court's inquiry into the venire's possible prejudice based on allegations of gang membership." At the hearing on the motion, defense counsel did not offer anything more than what was included in the written motion. The State did not address the issue and the court asked defense counsel no questions concerning the allegation of his ineffectiveness. In denying the posttrial motion for a new trial, the court stated:

> "I have had an opportunity to review the post-trial motion filed by [defense counsel], and there's really nothing here that I haven't ruled on previously. I don't think that it's necessary that I reiterate my ruling that I stated before, so your motion for a new trial is denied. I ruled on all these motions at trial or pre-trial, so motion for new trial is denied."

¶ 111    A *per se* conflict exists where certain facts about a defense attorney's status create, by themselves, the conflict of interest. *Hernandez*, 231 Ill. 2d at 142. Our supreme court has identified three situations where a *per se* conflict exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant." *Taylor*, 237 Ill. 2d at 374 (citing *Hernandez*, 231 Ill. 2d at 143-44).

¶ 112    Short acknowledges that this court has held that an attorney arguing his own ineffectiveness does not fall within any of these three categories. See *People v. Perkins*, 408 Ill.

App. 3d 752, 761 (2011). He argues, however, that *Perkins* is distinguishable and "is otherwise at odds with Illinois Supreme Court authority" and, therefore, should not be followed.

¶ 113　　Short argues *People v. Willis*, 134 Ill. App. 3d 123 (1985), *People v. Keener*, 275 Ill. App. 3d 1 (1995), and *People v. Lawton*, 212 Ill. 2d 285 (2004), direct the outcome here. All of these cases found that a *per se* conflict arises when an attorney represents clients on a motion alleging his or her own ineffectiveness. The *Perkins* court found the fact that counsel "voluntarily and zealously" argued the claim at the hearing a distinguishing factor from *Willis*. Short argues no such distinction can be found here where defense counsel did not argue or support the ineffectiveness claim at the hearing, but instead, "buried" the one-sentence claim in the motion for a new trial. Short contends the concerns present in *Willis* are also present in the instant case and, therefore, his case is more like *Willis* than *Perkins*.

¶ 114　　Alternatively, Short argues defense counsel acted under an actual conflict of interest when he raised his own ineffectiveness in the posttrial motion. To show an actual conflict of interest, the defendant must offer "some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." *People v. Spreitzer*, 123 Ill. 2d 1, 18 (1988).

¶ 115　　The State contends counsel's failure to object to the trial court's inquiry into the venire's possible bias or prejudice toward gang members was "clearly a matter of trial strategy" because counsel's motion *in limine* to bar the gang evidence was denied and, therefore, not defective. Short responds that counsel's failure to object cannot be considered trial strategy in light of his own admission that his failure was ineffective.

¶ 116　　Counsel's decision to include an ineffective assistance claim in the posttrial motion does give rise to either a *per se* or actual conflict based on these facts. The trial court was well aware of counsel's conduct which he claimed gave rise to conflict. Counsel's conduct was a matter of record and, therefore, it was unnecessary for counsel to argue the claim in greater detail than what was included in the posttrial motion. The court could properly resolve the claim based on the record.

¶ 117　　Concerning the merits of the claim, the trial court properly rejected counsel's ineffectiveness for failing to object to the trial court's admonishment that the jury "may" hear evidence of gang membership. The charge of possession while a gang member was still among the offenses the jury would have to resolve at the time the jury was selected. Case law provides that a defendant has a right to have the jury informed that gang evidence may be presented and for the jurors to determine for themselves whether they can be fair in light of this evidence. See *Thompson*, 2013 IL App (1st) 113105, ¶¶ 108-10. Accordingly, if defense counsel had objected during *voir dire* to this line of questioning, he would have been arguing contrary to Short's best interests. There is no merit to Short's ineffective assistance claim and, as such, the trial court properly rejected it.

¶ 118　　　　　　　　　　　　　　　　　*Krankel* Inquiry

¶ 119　　Short alternatively argues that remand for a hearing as directed by *Krankel* is necessary, so that the issue of his trial counsel's alleged ineffectiveness can be investigated.

¶ 120　　When a defendant brings a *pro se* posttrial claim that trial counsel was ineffective, the trial court must adequately inquire into the claim and, then, under certain circumstances appoint new counsel to argue the claim. *Krankel*, 102 Ill. 2d at 187-89. To exercise his or her rights under *Krankel* and trigger the court's duty to conduct an inquiry, "a *pro se* defendant is not

required to do any more than bring his or her claim to the trial court's attention." *People v. Moore*, 207 Ill. 2d 68, 79 (2003). The trial court, however, is not required to automatically appoint new counsel simply because the defendant presented a posttrial claim that his or her trial counsel was ineffective. *Id.* at 77. Rather, the trial court must first examine the factual basis of the defendant's claim. *Id.* at 77-78. "The ultimate purpose of a trial court's initial inquiry into a defendant's ineffective assistance claim is to determine whether new counsel should be appointed." *People v. Cunningham*, 376 Ill. App. 3d 298, 304 (2007). The trial court can base its evaluation of the defendant's allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 79.

¶ 121    The record establishes that the trial court considered Short's claim and found it lacked merit. See *Moore*, 207 Ill. 2d at 79 (trial court may base evaluation on its knowledge of defense counsel's performance at trial). Although the court did not expressly state that it was conducting an inquiry under *Krankel*, nothing requires the court so state and nothing more was required under *Krankel*. See *People v. Dean*, 2012 IL App (2d) 110505, ¶ 15.

¶ 122                                CONCLUSION

¶ 123    Short received a fair trial before an impartial jury with effective representation. Finding no reversible error, we affirm defendant's conviction.

¶ 124    Affirmed.