2023 IL App (4th) 220837

NO. 4-22-0837

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| TRENTON XAVIER HIGGINS, | ) | No. 20CF1032 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justice Knecht concurred in the judgment and opinion.
Justice Lannerd specially concurred, with opinion.

**OPINION**

¶ 1        In May 2020, the State charged defendant, Trenton Xavier Higgins, with two

counts of aggravated battery to a child (great bodily harm), Class X felonies (counts I and II)

(720 ILCS 5/12-3.05(b)(1) (West 2018)), and one count of aggravated battery to a child (bodily

harm), a Class 3 felony (count III) (*id.* § 12-3.05(b)(2)).

¶ 2        In August 2021, defendant pleaded guilty to all three counts of aggravated battery.

In October 2021, the trial court sentenced defendant to concurrent prison terms of 20 years for

count I, 20 years for count II, and 5 years for count III. In August 2022, defendant filed a motion

to withdraw his guilty plea, which the court denied.

¶ 3        Defendant appeals, arguing that (1) the trial court erred by failing to admonish

him of the terms of his negotiated plea pursuant to Illinois Supreme Court Rule 402(a) (eff. July

1, 2012) and (2) postplea counsel did not strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). We disagree and affirm.

¶ 4                                 I. BACKGROUND

¶ 5                                 A. The Charges

¶ 6        In May 2020, the State charged defendant with two counts of aggravated battery to a child (great bodily harm), Class X felonies (counts I and II) (720 ILCS 5/12-3.05(b)(1) (West 2018)), and one count of aggravated battery to a child (bodily harm), a Class 3 felony (count III) (*id.* § 12-3.05(b)(2)). The charges alleged that in December 2019, defendant battered 20-month-old L.G., causing injury to L.G.'s abdomen (count I), perineum (count II), and "head/mouth" (count III).

¶ 7                       B. The Rule 402 Conference and Guilty Plea

¶ 8        In June 2021, the trial court conducted a Rule 402 conference (see Ill. S. Ct. R. 402(d) (eff. July 1, 2012)) with the parties. Defendant was not present. (Although the record does not include transcripts from the conference, at a later hearing on defendant's motion to withdraw his guilty plea, defense counsel testified about what occurred at the conference (*infra* ¶ 29)).

¶ 9        In August 2021, the trial court conducted a status hearing at which defendant communicated his intent to plead guilty to the three counts of aggravated battery. At the beginning of the hearing, defense counsel informed the court that defendant would be tendering a "partially negotiated plea." However, the State responded that the plea would be "open," and defense counsel agreed, stating, "Open plea based on the discussions in the 402."

¶ 10        Later that same month, the trial court conducted a guilty plea hearing. Defense counsel stated, "Judge, this comes on for a partially negotiated plea, Your Honor." The court asked what the partial negotiations were, and defense counsel replied, "It's not, not partially

- 2 -

negotiated. There will be a dismissal of the 19-CF case and [defendant] might enter into an open plea in 20-CF-1032, which is an aggravated battery to a child. I misspoke." The court clarified, "So 2019-CF-3312 is being dismissed? *** And it's an open plea to 20-CF-1032?" Defense counsel replied, "That's correct." The court asked if defendant would be pleading guilty to all three counts against him in this case, and the prosecutor responded "yes" and said that the sentences would run concurrently.

¶ 11 The trial court asked defendant if he knew what an open plea was, and defendant responded, "Not exactly, sir. No sir." Defendant then spoke with his counsel off the record. After they spoke, counsel told the court, "Judge, I think I answered the question." When the trial court asked the question again, the following exchange occurred.

"DEFENDANT: I, I come here, and I get something assigning me between sentence, between 6 and the 30.

THE COURT: Okay. Say that again.

DEFENDANT: I'll come here and get anything between my sentencing.

[DEFENSE COUNSEL]: Between the range you mean, correct?

DEFENDANT: Yeah. Yes, sir.

THE COURT: Okay. An open plea is a plea where you plead guilty. These are Class X felonies, Counts 1, 2, and 3. They're all concurrent. But you're looking at 6 to 30 years, with three years mandatory supervised release, it's non-probationable, a fine up to $25,000. Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: Okay. When you plead guilty open [that] means there's no agreement. In other words, a negotiated plea is where you plead guilty for a

- 3 -

certain number of years, and you would know what that number was before you plead guilty. Do you understand? You've got to speak up.

DEFENDANT: Yes, sir.

THE COURT: Okay. An open plea means there's no agreement. Well, right now, I don't even know what the sentence would be. [Defense counsel] doesn't know; [the State] doesn't know. We'd have a sentencing hearing. Your attorney would present evidence on why it should be towards the low end. [The State] would present evidence or argument as to why it should be any number in between 6 and 30. Then after hearing that argument from the attorneys and any evidence in aggravation, any evidence in mitigation, and reviewing the Presentence Investigation Report, which is sort of a biography about you, everything I need to know for a sentencing hearing, I'd also let you speak at sentencing. After all that, I would give you a sentence. I would decide what the sentence would be. It could be 6; it could be 30; it could be anything in between, followed by 3 years mandatory supervised release, which is what we used to call parole. Do you understand?

DEFENDANT: Yes, sir.

THE COURT: Knowing all that, do you wish to plead open to these three counts in 20-CF-1032 of aggravated battery to a child?

DEFENDANT: Yes, sir."

¶ 12    Defendant answered questions appropriately regarding his name, age, use of aliases, and highest level of education. The trial court also asked defendant whether he could read, write, and understand English, and defendant responded, "To a certain degree." During the

court's questioning, the court learned that defendant had an individualized education plan when he was in middle school and a learning disability regarding, according to defendant, "[r]eading comprehension [and] a little bit of math."

¶ 13    The trial court told defendant to alert the court if defendant did not understand any of the terms the court was using during the plea hearing.

¶ 14    Defendant continued to answer questions appropriately regarding his citizenship, his place of birth, how long he had been locked up, and whether he was taking medication. The trial court asked whether he had been diagnosed with a mental health disorder or mental illness, and the following exchange occurred.

"DEFENDANT: I, I don't know what exactly. My mom had that paperwork.

THE COURT: Okay. All right. Is there anything that is—are you able to understand me fine today?

DEFENDANT: Yes, sir.

THE COURT: And [defense counsel] too?

DEFENDANT: Yes, sir.

THE COURT: Okay. Because before I accept your plea of guilty, I want to be sure you understand your legal rights and the rights you give up when you plead guilty. So, if you don't understand something I say, stop me and ask questions. Okay?

DEFENDANT: Yes, sir."

¶ 15    The trial court (1) informed defendant of the charges and possible penalties for each charge and (2) asked defense counsel (a) if he had discussed each of the charges with

defendant and (b) whether defendant understood each of the charges, the possible penalties, and the consequences of pleading guilty. Counsel responded affirmatively. The court asked if counsel had discussed with defendant the nature of an open plea, and counsel said he had done so, and that defendant understood.

¶ 16    The trial court informed defendant that (1) he did not have to plead guilty; (2) the State had the burden of proving him guilty beyond a reasonable doubt; (3) he had the rights (a) to elect a jury trial or bench trial, (b) to confront witnesses, (c) to testify, and (d) to remain silent; and (4) by pleading guilty, he would be waiving those rights. The court asked if defendant understood, and he answered, "Yes, sir." The court asked if he had any questions, and he answered, "No, sir."

¶ 17    The State recited the following factual basis for defendant's guilty plea:

"[O]n December 21st of 2019, minor child LG, *** who was under 13 years of age, was being watched by this defendant who was 18 years of age while the, while the minor child's mother was at work. The mother indicated that the mother and [defendant] were in a relationship since Halloween. She also indicated that prior to leaving the child with [defendant] she fed him oatmeal and got him dressed for the day and left him watching TV.

She indicated [defendant] called and messaged her several times, but she did not receive the messages or calls until many hours later. When she called [defendant] back, he told her that LG was sick, and she needed to come home. When she came home, LG was partially unresponsive and became more unresponsive and took him to the hospital. On the way to the hospital, LG became worse. At the hospital he had to be resuscitated, and it was determined that he

[had a] torn frenulum, the flap of skin between the lip and gum, and a chipped tooth and that he had several bruises. It also was later found that he had internal injuries to his abdomen, including injuries to his perineum.

Dr. Ray Davis, who is a board-certified child abuse expert, examined LG. In the medical records, in his opinion, was that the child suffered from the injuries described and that the diagnosis was physical child abuse manifested by blunt abdominal trauma with abdominal bruising and intestinal perforation. There [were] also multiple traumas to his perineum and head."

¶ 18        The trial court asked defendant if he understood what he was pleading guilty to and if he was doing it of his own free will. Defendant replied, "Yes, sir," to each question. The court asked if any threats or promises had been made to defendant to get him to plead guilty, and defendant replied, "No, sir." The court accepted the guilty plea.

¶ 19                                C. Sentencing

¶ 20        In October 2021, the trial court conducted defendant's sentencing hearing. The court asked the State, "Is there any requirement that the sentences be consecutive or concurrent?" The State replied, "Judge, I believe *** there was an agreement they would be concurrent. They're not mandatory consecutive. They could have been discretionarily [consecutive]." Defense counsel confirmed that was the agreement.

¶ 21        The State presented the trial court with multiple photographs of L.G.'s bruises, burns, and his condition in the hospital. The State also called as witnesses Detective Tim Campbell and L.G.'s paternal grandmother, Karla F. Campbell testified that defendant initially denied burning L.G. but ultimately stated the burns occurred when defendant was teaching L.G. that lighters are dangerous. Defendant denied knowing how L.G.'s other injuries occurred, but he

speculated they could be the result of forcing L.G. into a chair to eat breakfast. Kathy testified that L.G. (1) spent 143 days in the hospital as a result of his injuries, (2) underwent multiple surgeries, and (3) required constant care from medical professionals. She stated that her grandson was no longer the same child that he was before the injuries.

¶ 22    The State recommended a sentence of 20 years in prison on the first two counts and 5 years on the third.

¶ 23    Defendant's mother testified in mitigation and pointed out defendant's intellectual deficiencies and the lack of a father in his life. Defendant made a statement in allocution thanking his mother and the trial court. Defense counsel asked for the minimum sentence of six years, emphasizing defendant's respectful demeanor, lack of criminal record, and what was said during the Rule 402 conference. The court responded by asking the parties, "All right. Just to be clear. This was an open plea, correct?" Both parties answered, "Yes."

¶ 24    Following arguments, the trial court stated that it had considered all the relevant factors in aggravation and mitigation and the evidence presented. Ultimately, the court sentenced defendant to two 20-year prison terms and one 5-year term, all to run concurrently. The court noted that the victim was "savagely beaten" and "abused" by defendant, emphasizing that the victim was "a healthy, happy little boy" prior to defendant's actions, but he now "needs constant care around the clock, just hanging on to life, but not really having any quality of life."

¶ 25                    D. Postsentencing Proceedings

¶ 26    Defendant timely filed a motion to withdraw his guilty plea. In December 2021, defendant, through counsel, filed an amended motion to withdraw his guilty plea, arguing that his guilty plea was not knowing and voluntary. The motion also requested the trial court to permit trial counsel to withdraw and appoint new counsel so that defendant could fully develop a

claim that his guilty plea counsel, Kunal Kulkarni, rendered ineffective assistance when advising him about the plea.

¶ 27        The trial court allowed Kulkarni to withdraw and appointed new counsel, who filed a new motion to withdraw the guilty plea in August 2022. That motion alleged that (1) defendant's waiver of his right to a jury was not knowing and voluntary and (2) defendant did not understand the court's Rule 402 admonitions when he entered his guilty plea. The motion also alleged that Kulkarni provided erroneous advice that defendant relied upon in forming his decision to plead guilty. Specifically, defendant's motion alleged that based on the judge's comments during the Rule 402 conference, defendant believed he "would get no more than seven years in [prison] and that the defendant would be out of prison by the time he turned 25." Postplea counsel attached to the motion a Rule 604(d) certificate that failed to state that counsel had reviewed the sentencing hearing transcript.

¶ 28        In August 2022, at a hearing on the motion, the State pointed out that postplea counsel "filed his own version of the 604(d) certificate" and requested that counsel fill out and file "the triplicate form that is provided by the Court" to avoid any future problems with the certificate. Postplea counsel completed the form and filed it with the court. This second Rule 604(d) certificate stated that counsel had reviewed the sentencing transcript.

¶ 29        At the hearing on the motion to withdraw the guilty plea, Kulkarni testified that at the Rule 402 conference, the trial court indicated a fair sentence in defendant's case would be "toward the low end, *** 8, or 7 were the explicit figures," but the State was unwilling to agree to that recommendation. However, Kulkarni still believed that defendant should plead guilty based on the prison sentence "explicitly mentioned by the [court]" and advised defendant to do so. On cross-examination, Kulkarni acknowledged that he felt defendant had entered the plea

knowingly and voluntarily.

¶ 30     At the conclusion of the hearing, the trial court denied defendant's motion to withdraw his guilty plea.

¶ 31     This appeal followed.

¶ 32                              II. ANALYSIS

¶ 33     Defendant appeals, arguing that (1) the trial court erred by failing to admonish him of the terms of his negotiated plea pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) and (2) postplea counsel did not strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). We disagree and affirm.

¶ 34                        A. The Rule 402 Admonitions

¶ 35     Defendant argues that the trial court's admonitions to him did not substantially comply with Rule 402 because the record shows that he (1) "was never asked whether he understood that the concurrent sentences were part of the agreement," (2) believed he would receive a seven-year sentence, and (3) was unaware that he would be unable to subsequently challenge his sentence.

¶ 36     Although defendant concedes that he did not preserve his argument regarding improper Rule 402 admonitions for review because he failed to include the issue in his motion to withdraw, he contends that we may review the issue (1) under the doctrine of plain error or, alternatively, (2) as a claim of ineffective assistance of counsel. However, regardless of the analytical framework, defendant's claim fails because the record shows that the trial court complied with Rule 402.

¶ 37                          1. *The Applicable Law*

¶ 38     Rule 402 provides, in relevant part, that before a guilty plea may be accepted, the

trial court must personally admonish the defendant in open court (1) about the nature of the charge, (2) about the minimum and maximum sentence, (3) that the defendant has the right to plead not guilty, and (4) that no trial of any kind will occur if the defendant pleads guilty. Ill. S. Ct. R. 402 (eff. July 1, 2012). The court must find that the plea is voluntary and that the defendant understands those admonitions. *Id.* The court must confirm the terms of the plea agreement and determine whether any force or threats or promises, apart from a plea agreement, were used to obtain the plea. *Id.* Finally, the court must determine whether a factual basis supports the plea agreement. *Id.*

¶ 39           Before accepting a guilty plea, the trial court must substantially comply with Rule 402. *People v. Boykins*, 2017 IL 121365, ¶ 12, 93 N.E.3d 504. "[A]n imperfect admonishment is not reversible error unless real justice has been denied or the defendant has been prejudiced by the inadequate admonishment." *People v. Whitfield*, 217 Ill. 2d 177, 195, 840 N.E.2d 658, 669 (2005). Appellate courts review *de novo* whether the trial court complied with Rule 402. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14, 998 N.E.2d 143.

¶ 40                                2. *This Case*

¶ 41           Here, defendant's claims fail because the trial court complied with Rule 402. Although the record indicates that the parties and the court had uncertainty about the terms of the plea agreement at the onset of the guilty plea proceedings, any confusion was cleared up during the guilty plea process. Defendant's quibbles on appeal about the terminology used to describe the plea agreement miss the point—namely, that the terminology used had no effect on the outcome of this case.

¶ 42           In addition to the trial court's discussion of the length of defendant's potential sentences at the guilty plea hearing, the court also confirmed in open court that the State would

be dismissing a separate criminal case against defendant. Specifically, the court asked, "So 2019-CF-3312 is being dismissed?" to which defense counsel replied, "Yes." Although the question was not addressed directly to defendant, defense counsel answered the question and defendant was present to hear that information. Accordingly, defendant was clearly made aware that he would serve between 6 and 30 years in prison and that his other case would be dismissed due to his pleading guilty.

¶ 43    The record shows that the trial court complied with Rule 402 by explaining to defendant the terms of his plea agreement in a thorough and detailed manner and making clear the agreement's essential characteristics: (1) that the sentences would run concurrently and not consecutively, (2) that defendant would receive between 6 and 30 years in prison based on the evidence to be presented at the sentencing hearing, and (3) that the charges against him in an unrelated felony case (case No. 19-CF-3312) would be dismissed. The court also explained to defendant it did not "even know what the sentence would be." Defendant agreed that he understood those terms and that no one had promised him anything in exchange for his plea. When asked if he had any questions, he simply said "no."

¶ 44    On the one hand, the guilty plea here was "partially negotiated" in the sense that (1) the agreement limited the trial court to ordering defendant's sentences to be served concurrently and (2) a felony charge against defendant was being dismissed. On the other hand, the plea agreement was "open" in the sense that the court was free to sentence defendant to a prison term from a range of 6 to 30 years, as long as the sentences were imposed concurrently and not consecutively. However, the name given to the plea agreement by the parties or the court—whether "open" or "partially negotiated"—does not matter as long as the Rule 402 admonitions were properly given and the record shows the defendant understood them. Both

occurred here.

¶ 45　　　We note that the State argues alternatively that the trial court substantially complied with Rule 402. However, we need not venture down that path because the court *did* comply with Rule 402. Accordingly, defendant's claims of plain error and ineffective assistance are totally without merit.

¶ 46　　　　　　　　　B. The Rule 604(d) Certificate

¶ 47　　　Defendant argues that the record rebuts the legitimacy of his postplea counsel's corrected Rule 604(d) certification. Essentially, defendant contends that counsel *intentionally* omitted from his original Rule 604(d) certificate a statement that he reviewed the sentencing transcripts because counsel had not, in fact, reviewed them. In other words, defendant on appeal contends that the contents of postplea counsel's second Rule 604(d) certificate were false. The record does not support that contention.

¶ 48　　　　　　　　　1. *The Applicable Law*

¶ 49　　　"Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7, 48 N.E.3d 1071. The rule requires a defendant's counsel to file a certificate with the trial court, asserting as follows:

　　　"1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

　　　2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

　　　3. I have made any amendments to the motion necessary for the adequate

presentation of any defects in those proceedings." Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(d).

¶ 50        A Rule 604(d) certificate must strictly comply with the requirements of Rule 604(d). *Id.* If a certificate is determined to be deficient, then the appellate court is required to remand the case to the trial court for proceedings that strictly comply with Rule 604(d). *Id.* We review *de novo* issues of compliance with Rule 604(d). *Id.*

¶ 51                                2. *This Case*

¶ 52        Defendant contends that postplea counsel's second Rule 604(d) certificate was invalid. Specifically, defendant argues that the record refutes the facial validity of the second certificate because (1) counsel's original certificate did not contain a statement that he reviewed the sentencing transcripts, (2) at no point did postplea counsel state that he actually obtained the sentencing transcripts, and (3) the date the court reporter certified the transcripts in preparation of the record on appeal came after postplea counsel's filing of the second Rule 604(d) certificate.

¶ 53        However, postplea counsel ultimately *did* sign a Rule 604(d) certificate—namely, the second one—stating that he had reviewed the sentencing transcript. Although "a facially valid Rule 604(d) certificate may be refuted by the record" (*People v. Curtis*, 2021 IL App (4th) 190658, ¶ 37, 186 N.E.3d 467), to prevail on such a claim, a defendant must actually show the record refutes the certificate, which is not the case here. The State notes that "the absence of evidence is not evidence of absence," an adage that we agree applies in this case. The record contains no evidence that (1) postplea counsel failed to review the trial transcripts or (2) the language missing from the original certificate was anything other than a scrivener's oversight, which counsel corrected when he filed the form certificate.

¶ 54        This court has already rejected the argument that the transcript certification date

serves as evidence of the first date a defense attorney could have reviewed transcripts. See

*People v. Little*, 2011 IL App (4th) 090787, ¶ 16, 957 N.E.2d 102 ("[T]he date the court reporter

certified the transcripts in preparation of the record on appeal is not evidence of the first date a

defense attorney could have reviewed the transcripts." (Internal quotation marks omitted.)).

¶ 55          Last, we disagree that the record contains no evidence that the parties received the

sentencing transcripts. Indeed, at the hearing on defendant's motion to withdraw, the State tried

to impeach defendant and defendant's trial counsel, Kulkarni, with specific statements from the

sentencing hearing. The transcript of the sentencing hearing in the record on appeal confirms that

the State used verbatim statements. And, when the trial court ruled on defendant's motion, it

referred to the sentencing transcript. (We note the record also demonstrates that postplea counsel

requested continuances on at least two occasions specifically because he was waiting for

defendant's trial counsel to provide him with the necessary transcripts.)

¶ 56          Because nothing in the record refutes counsel's valid Rule 604(d) certificate,

defendant's argument fails.

¶ 57                              III. EPILOGUE

¶ 58          Defendant's primary argument in this appeal is that he was not properly

admonished pursuant to Rule 402 because the trial court failed to elicit the terms of his

negotiated plea and confirm his understanding of that plea in open court. For the reasons earlier

explained, we have rejected that argument.

¶ 59          However, defendant was nevertheless not treated fairly because he was misled by

the trial court during an unnecessary and unwise Rule 402 conference. Specifically, the court

misled defense counsel—and, ultimately, defendant—by saying that the court believed a fair

sentence in this case would be "toward the low end" of the 6- to 30-year range and was inclined

- 15 -

to sentence defendant to something like 7 or 8 years in prison.

¶ 60       And yet, after defendant later pleaded guilty and the trial court conducted a sentencing hearing, the court sentenced defendant to 20 years in prison—nearly two and a half times what the court had led the attorneys and defendant to believe would be a fair sentence. Defendant was required to serve 12 more years than the court indicated would be appropriate at the Rule 402 conference.

¶ 61       This obvious injustice was the result of the trial court's conducting a Rule 402 conference, a pernicious practice that is regrettably countenanced by Illinois Supreme Court Rule 402 (eff. July 1, 2012). Although this court has previously criticized trial courts for conducting Rule 402 conferences, this case epitomizes the problems such conferences cause and why they need not and should not ever be conducted.

¶ 62                    A. The Specially Concurring Opinion in

                    *People v. Anderson*, 2016 IL App (4th) 140402-U.

¶ 63       Over seven years ago, the author of this opinion addressed the perils of Rule 402 conferences in a special concurring opinion in *People v. Anderson*, 2016 IL App (4th) 140402-U. Because Rule 402 conferences are still causing problems, as the present case demonstrates, we repeat that special concurrence as part of our opinion in this case.

           "Although I fully agree with the majority's decision, I specially concur to
           express my strong disapproval of the plea conference, sometimes referred to as a
           '402 conference,' that the trial court conducted in this case. As is almost always
           the case, the 402 conference was totally unnecessary and had the potential to
           bring the trial court and the judiciary into disrepute.

           Both the United States Supreme Court and the Illinois Supreme Court

have recognized that plea negotiations are an important part of the criminal justice system. See, *e.g., Blackledge v. Allison,* 431 U.S. 63, 70 (1977) ('Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned.'); see also *Lafler v. Cooper*, [566] U.S. [156], [170], 132 S. Ct. 1376, 1388 (2012) ('[T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences.'); see also *People v. Boyt*, 109 Ill. 2d 403, 416, 488 N.E.2d 264, 271 (1985) ('Plea bargaining plays an important role in our criminal justice system. *** [W]hen [it is] properly administered, [it] is to be encouraged.'). But such negotiations should occur between the *parties* and should not involve the trial court. This case is no exception. As is almost always the case, defense counsel sought to get the trial court involved—ostensibly so that the court could get a 'preliminary feel' about a possible sentence—but defense counsel's transparent motive was to convince the court that it should tell the prosecutor he should go along with defendant's request for probation and not insist on at least a three-year prison sentence. When the court indicated that it thought the State's offer of three years was 'a very good offer,' the case ultimately proceeded to a jury trial.

So, what was gained? Clearly, nothing that would enable the trial court to get a 'preliminary feel' about a possible sentence. After all, once a jury convicted defendant, the court ordered a presentence investigation report. After receiving

that report, the court had all the 'feel' it needed to impose sentence.

A problem with 402 conferences is that when they typically occur, a defendant has not yet indicated whether he wants a jury trial or bench trial if a plea agreement cannot be reached. Had defendant here chosen a bench trial, as was his right, the trial court, serving as the trier of fact in this case, could have been affected by the various representations the parties made during the 402 conference, especially if some of those representations were not fulfilled through admissible evidence at trial.

The judiciary opens itself to disrepute if, as a result of a 402 conference, a trial court indicates that a sentence of three years, for example, would be appropriate, only to later impose a sentence of eight years after a defendant rejects the plea agreement of which the court approved and opts instead for a jury trial. Cynics call this 'the jury tax,' and courts should do everything they can to avoid giving any credence to such cynicism.

The easiest way, of course, is for trial courts *never* to be involved in plea bargaining. That way, when a court imposes sentence after a jury trial, it will be based upon the court's assessment of the various sentencing factors, and the court cannot be accused of imposing a jury tax because it never was involved in the plea-bargaining process to begin with.

In all criminal cases involving plea negotiations, the process should be simple and straightforward, as follows:

  • (1) The trial court should not be involved in plea bargaining and should not participate in any 402 conferences.

• (2) The trial court should go along with the plea agreement reached by the defendant and the prosecutor with almost no exceptions.

• (3) On the very rare occasion when the trial court cannot go along with the plea agreement, it should so inform the parties and offer the defendant, if he wishes, the right to withdraw his guilty plea.

• (4) In accordance with the above procedure, a defense attorney may explain to his client *with certainty* that if the parties reach a plea agreement, one of two things *must* happen: (a) the court will accept the plea agreement (which should almost always be the case) or (b) the defendant will be given his absolute right to withdraw his guilty plea.

402 conferences are pernicious. The rules of the Illinois Supreme Court should not permit them. Despite the regrettable situation that such conferences are currently permissible, no trial court ever need participate in one, and a court seeking to avoid the appearance of impropriety should simply refuse to do so.

Last, I emphasize that I was a trial judge for 12½ years, and my primary assignment was to preside over felony cases in Champaign County. During that time, I handled thousands of felony cases throughout central Illinois and Cook County. The latter opportunity arose from 1978 to 1989, when I was assigned to the Cook County Criminal Court at 26th Street and California Avenue for two weeks at a time during those summers. I never participated in 402 conferences as a trial judge (even in Cook County) and was able to achieve the same number of negotiated guilty pleas as the judges who participated in such conferences." (Emphases in original.) *Id.* ¶¶ 47-55 (Steigmann, J., specially concurring).

¶ 64                    B. Rule 402 and the Conference in This Case

¶ 65        In May 2020, the State charged defendant with multiple felonies, including two

Class X counts, which required upon conviction that defendant be sentenced to prison for less

than 6 but not more than 30 years. In June 2021, the trial court agreed to conduct a Rule 402

conference.

¶ 66        Rule 402(d)(1) directs that "[p]rior to participating in the plea discussions, the

trial judge shall admonish the defendant and inquire as to the defendant's understanding of the

following." Ill. S. Ct R. 402(d)(1) (eff. July 1, 2012). Rule 402(d)(1) then sets forth eight

paragraphs of explanatory admonitions the court is required to give a defendant "and inquire as

to [his] understanding of the [same]." *Id.*

¶ 67        In the present case, the trial court's admonitions to defendant prior to the Rule

402 conference, a conference conducted without defendant's presence, were woefully inadequate

when compared to the detailed requirements of Rule 402. We are hardly surprised, however,

because in this court's experience, trial courts rarely comply with this portion of Rule 402's

directives. If a defendant is admonished at all, the admonitions are vague and perfunctory, as

occurred in this case. More often, the admonitions are simply not given.

¶ 68                    1. *The Trial Court's Statements at the Rule 402 Conference*

¶ 69        Although no record of the Rule 402 conference exists, defendant's trial counsel,

Kulkarni, testified about the Rule 402 conference at the hearing on defendant's motion to

withdraw his guilty plea, as follows:

> "Q. [THE PROSECUTOR]: *** During that 402 conference, did the
>
> Judge at the end give an opinion or recommendation about what he believed a fair
>
> sentence in this case would be?

A. [KULKARNI]: Yes.

Q. All right. And what was that recommendation?

A. It was toward the low end, I believe 8, 7 were the explicit figures I can recall.

Q. Okay. And was the State willing to go along with that recommendation?

A. No."

¶ 70     When the trial court denied defendant's motion to withdraw his guilty plea, the court referred to the Rule 402 conference and said the following:

"I don't have notes from my 402 conference, but I do remember discussing the case and the 402 conference. I remember giving an opinion like 7 or 8 years, something towards the low end. I don't remember the exact number, but I don't dispute what Mr. Kulkarni says in terms of the range."

¶ 71     2. *Trial Counsel's Advice to Defendant Regarding the Guilty Plea*

¶ 72     Kulkarni testified that he spoke with defendant after the Rule 402 conference and informed him of what the judge had said. Kulkarni also testified as follows about the advice he gave defendant:

"Q. How did you advise [defendant] to proceed following that 402 conference?

A. I explicitly explained to him that I believe that he should enter the plea based on what [I] was told during the 402. I gave him the exact figure. I told him that he should take it.

Q. Okay. Did you—when you say you gave him the exact figure, what

figure is that?

A. I told him seven or eight. I said that was explicitly mentioned by the Judge.

\* \* \*

A. I told [defendant] that I had been through many sentencings in front of the Judge. I told him that in my experience that this Judge always stuck to what he said would happen. I explained to him, based on all of that, I fully believe this was the best thing for him to do. I, I am breaking down multiple conversations I had with him, but that was the essence of the conversations I had with him.

Q. So did you tell him he would get 7 or 8 years?

A. Yes, I told him that's what I believe would happen.

Q. What you believed or that's what would?

A. I told him, based on my experience, I believed at the end of the day he would get something at the very low end based on the 402, based on my experience in front of the Judge, based on what I had seen in numerous sentencings, what I believe would happen."

¶ 73            C. Rule 402 Conferences Should Be Recorded

¶ 74         No recording was made of the Rule 402 conference in this case, nor was a court reporter present to transcribe it. As a result, the only information the record contains about that conference is (1) Kulkarni's testimony at the hearing on defendant's motion to withdraw his guilty plea and (2) the trial court's statement that Kulkarni's remarks were correct, at least to the best of the court's recollection.

¶ 75         This absence of a record regarding the Rule 402 conference does not surprise us.

This particular panel of the Fourth District has over 80 years' cumulative experience as judges on the appellate court, and in the thousands of criminal cases that have come before us, we have hardly ever seen a transcript of a Rule 402 conference.

¶ 76 Nothing in Rule 402 prohibits a trial court from making a record of what was said at a Rule 402 conference, and such a record might address some of the problems that arise from Rule 402 conferences.

¶ 77 For instance, in the present case, a transcript would show exactly what was said not only by the trial court but also by the prosecutor and defense counsel. This additional information could be important because this record contains no explanation as to why the court stated at the Rule 402 conference that a sentence "in the low range, like 7 or 8 years," might be appropriate, yet imposed a 20-year sentence at the sentencing hearing.

¶ 78 Defenders of Rule 402 conferences often try to explain such disparities by claiming that the difference is "due to additional information" regarding the severity of the defendant's criminal conduct and its terrible effect upon the victims. But that explanation raises two questions. First, in the absence of a record, how can a court of review know what the trial court was told at the Rule 402 conference about the nature of the crime and its effect on any victims? And second, why did the prosecutor at the Rule 402 conference not provide the court with the full information about aggravating factors pertaining to the defendant's criminal behavior that later came out at the sentencing hearing?

¶ 79 We see no reason why a prosecutor would refrain from calling aggravating factors to the trial court's attention. This is why we view with skepticism the usual claim that the court "heard new information" to justify a sentence that is sometimes vastly greater than the sentence the court indicated at the Rule 402 conference was appropriate.

¶ 80    Glaringly absent from the record in the present case is *any* explanation why the trial court abandoned its earlier assessment of a fair and proper sentence and imposed one over two times greater.

¶ 81    So, what was gained by the trial court's participation in the unwise and unnecessary Rule 402 conference in this case? The record provides the answer: nothing at all, except (1) the court's statements at the conference misled defense counsel and defendant into entering an open plea of guilty, (2) the disparity between the 7- or 8-year sentence the court told counsel might be appropriate and the 20-year sentence the court actually imposed was an injustice, and (3) the circumstances of this case bring the judiciary into disrepute.

¶ 82    One of the many troubling aspects of this case is that the 20-year sentence the trial court imposed was fully justified given defendant's vicious beating of the young victim and the terrible injuries that small child suffered. Nonetheless, before defendant gave up his right to a trial on these charges by pleading guilty, he had a right to not be misled by the court when it explained the likely sentence he would face by pleading guilty.

¶ 83                    D. Defendant Was Misled by the Trial Court

¶ 84    We began our discussion in this Epilogue by asserting that defendant was not treated fairly by the trial court because he was misled by the court's remarks at the Rule 402 conference. We emphasize that we are not suggesting that the court *intentionally* misled defendant; however, the court's intention does not matter because the effect on defendant is the same regardless. The result is that defendant was not treated fairly.

¶ 85    This court has previously written that trial courts should be very hesitant to reject plea agreements reached between a defendant and a prosecutor. However, when such a situation arises, the court should tell defense counsel that (1) the court is unwilling to accept the plea

agreement and (2) if the defendant wishes to withdraw his guilty plea, the court would grant that motion and recuse itself from further proceedings. In our opinion, fairness requires no less.

¶ 86 Similarly, once the trial court in the present case determined that it was going to impose a sentence that was far in excess of the sentence it had favorably discussed with the attorneys at the Rule 402 conference, the court should have *sua sponte* acted to correct the situation. Specifically, the court should have informed defense counsel that because the court intended to impose a sentence upon defendant far in excess of the sentence the court indicated would be appropriate during the Rule 402 conference, the court would give defense counsel an opportunity to discuss with defendant whether he might wish to withdraw his guilty plea, explaining that if defendant so moved, the court would grant the motion and then recuse itself.

¶ 87 Assuming that the trial court at the sentencing hearing did not recall its statements at the Rule 402 conference that a seven- or eight-year sentence would be appropriate, once defense counsel at the hearing on defendant's motion to withdraw the guilty plea had refreshed the court's recollection, the court should then have *sua sponte* acted as we just described. Out of a sense of *fairness*, the court should have told defense counsel that the court had then realized that it had misled defense counsel and, through him, defendant, about the court's view of this case and may have induced defendant to plead guilty based upon a false premise—namely, that the court would impose a much lesser sentence. The court should have given defendant the opportunity to withdraw his guilty plea and begin anew with a different judge.

¶ 88 E. Transparency Is Needed in Judicial Proceedings

¶ 89 Because (1) the judiciary is part of the government and (2) transparency in governmental actions—particularly, the criminal justice system—is always desirable whenever feasible, we emphasize that no excuse exists for the failure of trial courts that choose to engage

in Rule 402 conferences to record those conferences. After all, the business of the judiciary should be—and almost always is—conducted in open court.

¶ 90 Discussions about cases between the trial court and the parties should occur in secret only when holding those discussions in public would cause serious prejudice to a party. However, that is rarely, if ever, the case regarding Rule 402 conferences. After all, if pretrial motions such as motions *in limine* and motions to suppress are heard in open court and a record made thereof, why not Rule 402 conferences?

¶ 91 Further, even if the conferences are not held in open court, no reason exists why an electronic recording should not be made or a court reporter transcribing the conference should not be present, except, of course, that the trial court might never want the discussion at the Rule 402 conference to see the light of day. But such a reason is utterly illegitimate.

¶ 92 We have previously criticized trial courts' engaging in Rule 402 conferences, pointing out that although Rule 402 *permits* courts to do so, it does not require such conferences. See, *e.g.*, *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 93 (collecting cases). Our preference would be for the Illinois Supreme Court to amend Rule 402 to prohibit Rule 402 conferences, but short of taking that step, the supreme court should at a minimum amend Rule 402(e), which currently requires a transcript of the proceedings "required by [Rule 402] to be in open court [and to] be taken verbatim" (Ill. S. Ct. R. 402(e) (eff. July 1, 2012)), to add a sentence to that paragraph to read substantially as follows: "Any conference involving the court and the parties conducted pursuant to paragraph (d) of this Rule shall be taken verbatim and upon motion of any party or upon order of the trial court or any court of review, transcribed, filed, and made part of the common law record."

¶ 93 If a trial court and the parties knew that everything said at a Rule 402 conference

would see the light of day, we strongly suspect many of the abuses connected with Rule 402 conferences would be reduced, along with the desirability of engaging in them at all.

¶ 94        F. Rule 402 Conferences Are Frequently Abused by Trial Courts

¶ 95        A regrettably common practice—particularly in Cook County—that arises out of Rule 402 conferences is for the trial court not merely to engage in plea discussions with the parties, but instead to literally take over the proceedings and to "make an offer" to defense counsel regarding the sentence the court would impose if the defendant pleaded guilty. And, of course, heaven help any defendant who, after hearing the *judge's* offer, rejects it, stands trial, and is convicted.

¶ 96        An example of such a practice appears in the recent First District opinion in *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 1, in which the defendant was convicted after a bench trial of aggravated vehicular hijacking and armed robbery and was sentenced to concurrent prison sentences of 15 years. The defendant on appeal argued that his sentence was excessive, in part, because it reflected a "trial tax" imposed by the trial court as punishment "for refusing *the court's* pretrial offer." (Emphasis added.) *Id.* ¶ 25. The First District rejected the defendant's "trial tax" claim, reasoning that (1) it must be "clearly evident" in the record that the harsher sentence resulted from the trial demand, such as evidence that the actual sentence is outrageously higher than the one offered during plea negotiations (*id.* ¶ 26), and (2) the defendant's sentence, "which amount[ed] to just over a twofold increase from the pretrial offer, [was] not so outrageously disproportionate that we are left only to conclude that it was the product of a trial tax" (*id.* ¶ 27).

¶ 97        The First District in *Jones-Beard* identified the trial court, not the prosecutor, as the entity that made the offer during plea negotiations when it wrote the following: "Given this

record, we conclude that *the trial court's offer*, which was for the minimum term allowable, is best viewed as an acceptable 'concession' afforded to [the defendant] in exchange for his guilty plea." (Emphasis added.) *Id.* ¶ 28.

¶ 98       In *Jones-Beard*, the First District cited its earlier decision in *People v. Carroll*, 260 Ill. App. 3d 319, 349, 631 N.E.2d 1156, 1174-75 (1992), which rejected a similar argument because "the sentence imposed was only 2½ times that which was offered to him at the pretrial conference." In *Carroll*, the First District similarly wrote that it was the trial court, not the prosecutor, who was the entity plea bargaining with the defendant:

> "[The defendant] asserts that the trial court punished him for exercising his right to a jury trial. More specifically, he claims that although *the court initially offered* to impose concurrent sentences of 15 years, and later 18 years (concurrently), on the attempt (murder) and aggravated criminal assault charges, it nevertheless sentenced him to consecutive sentences of 20 years on those two charges after he refused to plead guilty and was convicted by the jury." (Emphasis added.) *Id.* at 348.

¶ 99       The First District rejected the defendant's argument, concluding that the defendant did not offer "the slightest evidence that the trial court imposed the 40-year sentence as a punishment for [the defendant's] exercise of his right to a jury trial." *Id.* at 349. The First District justified its decision by noting that "the sentence imposed was *only* 2½ times that which was offered to him at the pretrial conference." (Emphasis added.) *Id.*

¶ 100      So, according to the First District in *Carroll*, the fact that the defendant in that case would need to serve 22 years more in prison than the sentence *the trial court offered him* during plea negotiations is no big deal and certainly constitutes no support at all that the court

- 28 -

was punishing defendant for turning down the sentence *the court offered* during plea negotiations.

¶ 101 In contrast to the First District in *Carroll*, this court can suspend our disbelief only so far. The trial court's engaging in plea bargaining in that case was improper to begin with, and the notion that the court did not punish the defendant for turning down the court's offer is simply not believable.

\* \* \*

¶ 102 In this Epilogue, we have tried to explain why Rule 402 conferences are problematic at best and should be conducted differently or avoided entirely. Our hope is to avoid future cases like the present one, in which the trial court's unrecorded and seemingly casual remarks at a Rule 402 conference resulted in a defendant's unfair treatment.

¶ 103 IV. CONCLUSION

¶ 104 For the reasons stated, we affirm the trial court's judgment.

¶ 105 Affirmed.

¶ 106 JUSTICE LANNERD, specially concurring:

¶ 107 I concur in the majority decision affirming the trial court's judgment. However, I decline to join in paragraphs 57 through 102 of the majority opinion (*supra ¶¶* 57-102). While I agree with my distinguished colleagues about the potential challenges and pitfalls of Rule 402 conferences and generally support many of the majority's recommended modifications to Rule 402, I hesitate to be critical of the trial court or conclude defendant was not treated fairly without knowing exactly what was said by the prosecutor, defense counsel, and the court during the conference. That being said, the fact the record does not contain a recording of the Rule 402 conference supports the majority's concern regarding the rule as currently written.

*People v. Higgins*, 2023 IL App (4th) 220837

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 20-CF-1032; the Hon. Joseph G. McGraw, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Daniel J. O'Brien, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, David J. Robinson, and Matthew S. Goldman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |