2025 IL App (1st) 200387-UB

SIXTH DIVISION
June 20, 2025

1-20-0387

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  18 CR 5814 |
| | ) | |
| | ) | |
| LEVELL MASON, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Oden Johnson and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant received an adequate *Krankel* hearing and counsel complied with
        Illinois  Supreme Court Rule 604(d). Counsel was not ineffective. Counsel did not suffer
        from a conflict of interest.

¶ 2    Defendant, Levell Mason, appeals from the circuit court's order denying his motion to

withdraw his guilty plea and vacate his sentence. On appeal, he argues (1) the circuit court failed to conduct an adequate *Krankel* inquiry into the *pro se* claims of ineffective assistance of counsel he made during the middle of a hearing on his motion to withdraw his plea; (2) his counsel did not strictly comply with Illinois Supreme Court Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)) because she did not amend the *pro se* motion to include various claims; and (3) his right to conflict-free counsel was violated where counsel did not withdraw and continued to represent him during the proceedings on his motion to withdraw his plea after he claimed counsel was ineffective.

¶ 3                                    I. BACKGROUND

¶ 4       Mason was charged with one count of burglary and one count of possession of burglary tools. Mason entered a negotiated plea, pleading guilty to burglary in exchange for a six-year prison sentence, which was the lowest available sentence because his criminal background subjected him to mandatory Class X sentencing.

¶ 5       On July 26, 2018, the circuit court held a plea hearing. The circuit court advised Mason of the nature of the offense, the applicable sentencing range, his right to a jury trial, the applicable fines, and the mandatory supervised release (MSR) term he would have to serve upon release from prison. The circuit court asked Mason if he was being coerced into pleading guilty, to which he responded that he was "suffering." Mason explained that he was "emotionally sick, I'm mentally ill, bipolar. I'm ready to just get on, you know, find a better program for my life and just ready to go." He indicated he was receiving medication, specifically Abilify for "schizophrenic." Defense counsel informed the circuit court that she did not have any problem communicating with Mason, who "appears to completely understand everything I've said," but that he "has been frustrated." Mason advised the circuit court that he understood what was

happening and inquired whether he would get help for his mental illness in prison. Mason acknowledged he was pleading guilty "freely and voluntarily."

¶ 6      The circuit court then heard the factual basis for the plea. On April 1, 2018, at 12:07 a.m., police officers responded to an alarm at The Children's Place, a store located at 712 East 87th Street in Chicago. The store was closed, the doors were locked, and no employees were present. Police observed a broken window on the outside of the store and a hole in the drywall behind the broken glass. Officers heard someone moving inside the building and then observed Mason inside the building moving toward the back of the store. Officers arrested Mason as he exited the back of the building. Officers also observed that the store's security system had been tampered with, although the security camera was still recording. Security camera footage showed Mason inside the store and moving toward a safe. One of the safe's keys was inserted in the safe. A store employee informed police that the key had not been left in the safe but instead had been left next to the safe. The store manager did not know Mason, and Mason did not have permission or authority to be in the store after hours. The circuit court found there was a factual basis for the plea.

¶ 7      The circuit court, consistent with the plea agreement, sentenced Mason to six years' imprisonment and three years' MSR on the robbery count due to Mason's criminal background, which included a 2002 conviction for armed robbery, for which he was sentenced to 12 years in prison; a 2012 conviction for burglary, for which he was sentenced to 3 years in prison; and, a 2014 retail theft conviction, for which he received 13 days in county jail. Mason was advised of his appeal rights and the necessity for a motion to withdraw the plea.

¶ 8      Mason filed a *pro se* motion to reduce sentence. The motion, as it appears in the record on appeal, bears a file-stamp of August 31, 2018, but is not accompanied by any certificate of

service; rather, the accompanying notice of filing simply states the motion was filed. The substance of Mason's motion argues that the State charged him with burglary even though nothing was taken from the store and there was "reasonable doubt my charges are excessive due too off [sic] my background and habitual 6-year class X felon including my mental illness bipolar [sic]." An accompanying form affidavit contains Mason's name but is not signed by him in any manner.

¶ 9    On September 20, 2018, the circuit court held a status hearing. Defense counsel was present in court, but Mason was not. The circuit court indicated it would continue the motion for Mason to be present, and made the following remarks on the record:

> "I really think he is asking to vacate his plea based upon everything that's
> in [the motion]."  I think in terms of the 30 day time period he is—there is a couple days
> off [sic] so I am not going to—I don't think I am going to knock him out of the box for
> being two days late on a 30 day term based on the mail, so we will see what he wants to
> do when he is here.
>
> I think he needs to put on the record if it is something that he wants to proceed on
> or not."

¶ 10    On October 18, 2018, Mason told the circuit court that he wanted to withdraw his guilty plea. The circuit court indicated that, because Mason had already received the minimum sentence he was entitled to, it would recharacterize his motion to reduce sentence as a motion to withdraw his guilty plea and order the transcript for review.

¶ 11    On November 19, 2018, Assistant Public Defender (APD) APD Weisberg indicated that after speaking with Mason she was seeking a continuance to secure his medical records and court file prior to arguing the motion. The case was continued. On the next court date, APD Weisberg

notified the court that she had received and was in the process of reviewing the subpoenaed medical records and was researching the issues Mason brought to her attention. The court reminded her that it was considering recharacterizing Mason's *pro se* motion for reduction of sentence as a motion to withdraw his plea. The case was continued.

¶ 12    On February 6, 2019, APD Weisberg requested a retroactive behavioral clinical exam (BCX) to determine Mason's fitness for trial. On August 22, 2019, the BCX report was received by the court, in which Dr. Fidel Echevarria, staff psychiatrist with Forensic Clinical Services, rendered his opinion on Mason's fitness to stand trial when he pled guilty in 2018. In addition to interviewing Mason, Dr. Echevarria reviewed Mason's 2018 medical records when Mason was initially in custody and received treatment at Cermak Health Services and later that year transferred to the Illinois Department of Corrections (IDOC). In his report, Dr. Echevarria stated it was his opinion to a reasonable degree of medical and psychiatric certainty that Mason was mentally fit to stand trial during the period of 2018 when he accepted the plea offer of six years to resolve his case. Dr. Echevarria stated there was nothing in the documents he examined that showed Mason was experiencing any significant symptoms of a mental disease or any cognitive issue that would have compromised his understanding and decision-making abilities at the time of the plea.

¶ 13    On September 5, 2019, APD Weisberg filed a Rule 604(d) certificate and a motion to withdraw guilty plea. In the Rule 604(d) certificate, APD Weisberg stated that she: (1) had consulted with Mason in person, by mail, by phone, or by electronic means to ascertain his contentions of error in entering the plea of guilty and in his sentence, (2) had examined the trial court file and report of proceedings of the plea and sentence, and (3) had made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings. In the

motion to withdraw his guilty plea, APD Weisberg indicated that Mason wished to withdraw his plea and argued that "his understanding was compromised at the time of the plea." In support of the motion, APD Weisberg attached, in part, Mason's *pro se* motion and the transcript from the July 26, 2018, proceedings.

¶ 14     A hearing on the motion to withdraw the guilty plea was held on September 10, 2019. The State presented the testimony of Dr. Echevarria, who testified consistently with his report. Dr. Echevarria testified about Mason's interview, police reports, IDOC treatment records, and records from Cermak Health Services that he reviewed. During the interview, it was clear that Mason understood the concept of a plea bargain, the charges against him, and what he pled to. He understood what a felony was and the sentencing range, including the possibility of an enhanced sentence. At the time of the interview, Mason was on antidepressant and anti-psychotic medication, which were the same medications he was on at the time of his plea. These medications continued to be administered to him throughout his time at Cermak and IDOC as well. Dr. Echevarria testified that he had established Mason's baseline understanding as of July 2019, and the records reviewed indicated Mason had not experienced any symptoms of exacerbation of his illness or any kind of problems at the time he made the decision to accept the plea. Dr. Echevarria  testified that it was his opinion to a reasonable degree of medical certainty that Mason was fit to stand trial at the time he pled guilty.

¶ 15     APD Weisberg cross-examined Dr. Echevarria regarding the side effects of Mason's prescribed medications. He testified that, based on his review of the records, there were no reports that Mason suffered any side effects or symptoms of cognitive issues from the medications. Further, while the low dose antidepressant Mason received had a sedative effect, it was only given to Mason in the evening.

¶ 16    Mason testified at the hearing that at the time of his plea, he was taking several medications including antibiotics for a tooth that had been pulled by the dentist. According to Mason he was having side effects at the time from the medication and "couldn't think. I was incompetent or (sic) knowing what I was doing. My actual decision making." When asked why he referenced mental illness in his *pro se* motion to reduce sentence, he responded, "Because I told you, you know, I was on medication and you didn't listen to me." Mason testified that on the date of the plea, it was APD Weisberg's decision to accept the plea offer when the State "was asking to give me six years." When Mason was asked whether he recalled his conversation in court with the judge, he responded, "No. I know I was sick. I was depressed. And I wanted to get it all over with. I was having suicidal thoughts." Mason denied understanding that he was pleading guilty. He also stated that he did not recall telling the court he wanted to plead guilty or having a conversation with the court about his medication for his mental illness, but was aware of the proceedings from reviewing the transcripts. Mason stated that he wanted to withdraw his plea because he "didn't understand" and was "incompetent at the time of all the medication above that I was taking." According to Mason, he should have had a psychological evaluation before he pled guilty.

¶ 17    On cross-examination, Mason testified that he did not remember a discussion with his attorney about the offer and in fact, did not "remember anything." All he remembered was letting his lawyer know that he was on medication. He then clarified that he did let the judge know that he was on mediation.

¶ 18    After being cross-examined, Mason attempted to present the circuit court with a "motion to dismiss the counts," and indicated that he "wanted to relieve [defense counsel] from her duties," declaring "ineffective assistance of counsel," and asserting that she showed prejudice

and violated his fourteenth amendment rights. He elaborated that defense counsel had not investigated "to see if I was on medication and what type of medication I was on until after" he pleaded guilty. The circuit court explained that no investigation was carried out after the plea because the case was resolved, and an investigation was only done afterward because Mason filed a motion to reduce sentence, which was recharacterized as a motion withdraw the guilty plea. The court also noted, and the parties agreed, that in May 2019, in Lake County, a jury convicted Mason of a 2017 theft from a person offense, and that no fitness issues were raised. The parties proceeded to argument on Mason's motion to withdraw his guilty plea.

¶ 19     Prior to making an argument on the merits of the motion, APD Weisberg addressed Mason's ineffective assistance allegations. She stated that she spoke to Mason on both the first and second court dates, May 7 and June 5, 2018. On the following court date, July 10, 2018, she had a conversation with Mason about his mental health issues and whether he wanted to go to Cermak. Mason did not indicate to her that he wanted to go to Cermak, but instead said he would like an offer from the State. The State made a tentative offer, and the case was continued. On the next court date, the State formally offered six years for a plea, with no reduced charge given, and the minimum sentence with his mandatory Class X status. Originally, a date was given for Mason to consider the offer, but Mason became frustrated and wanted to plead guilty on that date. APD Weisberg spoke with Mason about the offer, and he decided to plead guilty. APD Weisberg also discussed the option of trial, and the Class X sentence of six years, served at 50 percent. They reviewed the jury waiver and presentence investigation forms, which Mason indicated he understood and signed. APD Weisberg felt that Mason was making a free and voluntary plea and had the case recalled to proceed on the plea.

¶ 20     APD Weisberg then argued Mason's motion to withdraw his guilty plea, noting that

records had been ordered and Dr. Echevarria issued his report. APD Weisberg argued:

"As to the motion Mr. Mason filed, we would stand on that motion. Certainly, it is Mr. Mason's belief that he was, as he said, incompetent. And as he said his decision making was impaired. He stated that he does not remember anything in terms of the court proceedings, but did state that he remembered the discussion he had with me prior to the court proceeding. I'll note for the record, which I tendered to counsel and your Honor People v. Jamisson [citation omitted] that indicated psychotropic medication or the use of psychotropic medication is not equivalent to a bona fide doubt of defendant's fitness.

And, your honor, I raise that because Mr. Mason indicated that in our initial conversation we discussed medication and that I told him or I essentially dismissed the fact that he was on medication. And, your honor, while I do not recall dismissing Mr. Mason's words, I did research the matter and found People v. Jamisson, which did indicate med's (sic) alone are not enough and so would not constitute a reason for Mr. Mason not to plead guilty if he so chose to proceed forward and do that.

Your honor, in our motion today Dr. Echevarria testified and he did testify that Mr. Mason was aware and that he was in an understanding state. And he believed this to be the case at the time of the plea. I would state though that he did not interview Mr. Mason back one year ago when this plea took place. And although he says the record did not identify any reason that Mr. Mason would not have understood at the time there is obviously no interview to determine his level of understanding. He didn't question him as to his level of understanding that one year before. The doctor discussed the anti-depression and anti-psychotic medications that Mr. Mason was on. He was on those medications while Mr. Mason was in Cermak, in Cook County Department of

Corrections while the plea discussion was going forward, while he took the plea. Similarly, on those same medications in the Illinois Department of Corrections after his sentence. And now on those medications while he is here in Cook County Department of Corrections currently being housed.

The doctor did say that the low dose that he was receiving could have or would have had an impact on the sedation level of Mr. Mason. And, in fact, he would have been more sedated and this could have caused him certainly to be drowsy perhaps during the time of the plea itself.

Your Honor, the doctor did believe that he was fit to stand trial at the time of the plea. However, Mr. Mason insists in his testimony that he was not fit. That he did not understand. And that his plea was not given freely and voluntarily. Based on that, your Honor, we would ask you to grant our motion. Thank you."

¶ 21    On September 10, 2019, the circuit court denied Mason's motion to withdraw his guilty plea. The circuit court noted that Mason pleaded guilty on July 26, 2018. With respect to the timeliness of the motion, the court noted that Mason filed a motion to reduce sentence that was not file-stamped within 30 days of the plea, but the circuit court

"erred on the side of giving defendant the benefit of the doubt and I found that since we were dealing with a few days passed [sic] 30 days from the time it hit the clerk's office that there was a chance the defendant had mailed it within 30 days. So it was not dismissed by this court on a technicality, which I believe that I could have done but I didn't do that."

¶ 22    The court also noted that nothing in Mason's written motion asserted ineffective assistance of counsel. The court reviewed the plea transcript, including the court's colloquy with

10

Mason about his medication and whether he wanted to proceed with the plea. The court recalled inquiring with defense counsel whether there were any problems communicating. The court stated, "It was never any bona fide doubt of this defendant's fitness in my mind." The court noted that neither party sought a BCX at that time. The court also noted, as did defense counsel, that taking medication for a mental illness does not in and of itself equate to bona fide doubt of fitness to stand trial. In addition to the transcripts from the original plea hearing and its own observations, the court considered the exhibits, the common law record, Mason's own motion seeking a reduction of his plea to that of a trespass as opposed to seeking to undo the plea, and Dr. Echevarria's testimony. Finding Mason was fit at the time of his plea, the court denied the motion.

¶ 23    Mason's notice of appeal identified the denial of his motion to withdraw his guilty plea, and purported to raise various claims, including ineffective assistance of counsel. For reasons unknown, the notice of appeal was not transmitted to this court. Mason filed a motion for leave to file a late notice of appeal from the circuit court's September 10, 2019, order, which this court granted on March 5, 2020.

¶ 24    On appeal, Mason argued (1) the circuit court failed to conduct an adequate *Krankel* inquiry into the *pro se* claims of ineffective assistance of counsel he made during a hearing on his motion to withdraw his plea; (2) his counsel did not strictly comply with Illinois Supreme Court Rule 604(d) because she did not amend the *pro se* motion to include various claims; and (3) his right to conflict-free counsel was violated where counsel did not withdraw and continued to represent him during the proceedings on his motion to withdraw his plea after he claimed counsel was ineffective.

¶ 25    In our prior decision, we observed that Mason's motion to withdraw his guilty plea bore a

11

file-stamp of August 31, 2018, which was more than 30 days after July 26, 2018, when the circuit court accepted his guilty plea and sentenced him to six years' imprisonment. 5 ILCS 70/1.11 (West 2020). Furthermore, nothing in the record demonstrated that his motion was mailed or, even assuming that it was mailed, when Mason placed his motion in the mail. Therefore, there was nothing in the record to suggest that Mason's motion was timely filed for purposes of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Mason*, 2022 IL App (1st) 200387-U, ¶ 26.

¶ 26    We also noted that the circuit court observed that Mason's motion was not timely but stated on the record that it would not penalize Mason-who was incarcerated at the time he filed the motion-for being a few days late because "there was a chance [Mason] had mailed it within 30 days." In the absence of any evidence of when Mason placed his motion in the mail system, we relied on the clerk of the circuit court court's file-stamped date on the motion itself, which showed the motion was not filed within 30 days of the circuit court's sentencing order. Therefore, based on *People v. Cooper*, 2021 IL App (1st) 190022, ¶ 4 (remanding the cause to the circuit court for a determination of whether the defendant timely filed his motion to withdraw his guilty plea but retaining jurisdiction), we remanded this matter to the circuit court for the limited purpose of determining the timeliness of Mason's motion, including when Mason mailed his original motion.. We retained jurisdiction to consider the timeliness, and assuming the circuit court's jurisdiction was established, to consider merits of the court's decision to deny motion, as well as the propriety of the circuit court's *Krankel* inquiry. *Mason*, 2022 IL App (1st) 200387-U, ¶ 31.

¶ 27    On remand, the circuit court conducted a hearing on the timeliness of Mason's motion to withdraw guilty plea, which was received by the circuit court on August 31, 2018. After hearing

Mason's testimony, the circuit court determined that the motion was filed timely and mailed from the IDOC before August 27, 2018, deadline.

¶ 28 Although we retained jurisdiction in this case, for reasons that do not appear in the record, the case was not immediately transmitted back to his court following the circuit court's ruling on remand. We also note that by the time this case had been remanded to the circuit court Mason had already served his sentence, including his period of mandatory supervised release. *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). Where, as here, the appeal involves the validity of a sentence, such appeal is rendered moot if the sentence has been served. However, because Mason challenges his conviction, this case is not moot. See *People v. Campbell*, 224 Ill. 2d 80, 84 (rejecting State's argument on mootness where "defendant's claim clearly calls into question the validity of his conviction"). That is because a conviction may trigger potentially severe legal, social, employment, and financial repercussions. See *In re Christopher K.*, 217 Ill. 2d 348, 359 (2005).

¶ 29 Our jurisdiction established, we now turn to the merits of the claims Mason raised in his opening brief.

¶ 30                                    II. ANALYSIS

¶ 31 Mason first argues that he is entitled to remand because the trial court failed to conduct an adequate inquiry into the ineffective assistance of counsel claims he raised during the hearing on the motion to withdraw his guilty plea. Specifically, Mason argues that at the conclusion of his testimony at the hearing on his motion to withdraw his guilty plea, he informed the court that he wanted "to relieve [APD Weisberg] from her duties," based on counsel's ineffectiveness. Mason contends that the court failed to make any inquiry into the ineffectiveness claim as required by *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 32    Our review of the record shows that when Mason asked that his counsel be relieved, the court informed him that it "can't do that right now in the middle of a hearing," Mason responded that APD Weisberg "show (sic) prejudice" and "violated [his] 14th Amendments." Mason then informed the court that he had had "a motion to dismiss the counts." The court responded, "that's not relevant right now because there's no counts on the table. *** Right now we're talking about whether or not I'm going to allow you to vacate the guilty plea from 07/26 of [2018]." Mason replied:

> "Your  Honor, she violated my amendments and (Inaudible) due process because I told her I was on medicine. She said it didn't mean anything. And then now she asked to subpoena my medical records from the Cook County Department of Corrections on June the 13th, which back then July 26th, 2018, it didn't mean anything. But why would you all subpoena my medical records from June 13th, 2019 if it didn't mean anything?
>
> * * *
>
> And I told her could she call my parents during the investigation and call my mother. She told me she couldn't get in contact [with] her. She did no visits in 2018, in 2019, since I've been in division 6 or division 10. She did no investigation to see if I was on medication and what type of medication I was on until after my guilty plea."

The court replied,

> "[APD Weisberg] didn't do any investigation after your plea of guilty because you were in my courtroom and I gave it a continuance and I wasn't supposed to see you again. And on that day, according to the transcript that I reviewed, I was asked to recall the case because the State made an offer to you for the minimum of six years and you wanted to take it."

14

The court then passed the case for argument on the motion to withdraw Mason's guilty plea.

¶ 33    A *Krankel* hearing "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29. It "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims" and "is intended to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal." *Id*. ¶ 41; *People v. Patrick*, 2011 IL 111666, ¶ 39.

¶ 34    However, the trial court is not automatically required to appoint new counsel when this type of claim is raised. *People v. Ayres*, 2017 IL 120071, ¶ 11 (citing *Jolly*, 2014 IL 117142, ¶ 29). Rather, the law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of the *pro se* posttrial claim of ineffective assistance. *Id*. An "adequate inquiry" is one that is "sufficient to determine the factual basis of the claims." *Id*. (quoting *People v. Banks*, 237 Ill. 2d 154, 213-14 (2010)). A "trial court may consider both the facts and legal merits of a defendant's *pro se* posttrial allegations of ineffective assistance of counsel at the preliminary inquiry stage." *People v. Roddis*, 2020 IL 124352, ¶ 70. In evaluating a *pro se* claim, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary." *Ayres*, 2017 IL 120071, ¶ 11. The trial court may discuss the allegations with defendant and may base its determination on its own knowledge of defense counsel's performance at trial. *Id*. However, "[t]here is no set format for how an initial inquiry into a defendant's *pro se* allegations of ineffective assistance of counsel should be conducted." *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 85. Moreover, a court need not expressly state it is conducting a *Krankel* inquiry. *People v. Short*, 2014 Il App (1st) 121262, ¶ 121.

¶ 35    If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Id*. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id*. The newly appointed counsel can independently evaluate the *pro se* claim and avoid the conflict of interest that defendant's trial counsel would experience in trying to justify his or her actions contrary to the defendant's position. *Roddis*, 2020 IL 124352, ¶ 36. Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review de novo. *Id*. ¶ 33.

¶ 36    Here, after Mason informed the court that he wanted APD Weisberg removed from his case due to her ineffectiveness, the court had an exchange with APD Weisberg, who said she spoke to Mason on the May 7th and June 5th, 2018, court dates. She stated that subsequently, on July 10, 2018, she had a conversation with Mason about his mental health issues and about whether he wanted to go to Cermak. Weisburg told the court that Mason did not want to go to Cermak but instead wanted a plea offer. The State made a tentative offer on that date. The case was continued to July 26, 2018, and on that date the State offered Mason six years' imprisonment in exchange for his plea of guilty. APD Weisberg spoke to Mason about the offer and Mason "decided that he was going to plead guilty" rather than continuing the case for him to consider the offer. She discussed the option of trial, but Mason indicated that he wanted to plead guilty on that date. APD Weisberg reviewed the jury waiver and presentence investigation forms with Mason and he signed both, which indicated he understood and was waiving his rights. APD Weisberg also relayed that on that court date, "Mr. Mason did mention that he was taking medication. He did mention his mental illness. And then your Honor proceeded to question him about that matter." APD Weisberg further stated that "your Honor questioned me about the

matter and I indicated my own belief that the plea was going to be made freely and voluntarily" and that Mason was "knowledgeable and understood the circumstances."

¶ 37    APD Weisberg then argued the motion to withdraw the guilty plea. She noted that Mason's medical records had been ordered and that Dr. Echevarria had issued a report. APD Weisberg argued that although he did not "remember anything in terms of the court proceedings," he did "remember the discussion he had with me prior to the court proceeding." She further argued that despite the fact that Dr. Echevarria testified that "Mason was aware and that he was in an understanding state" at the time of the plea, Dr. Echevarria did not interview Mason at the time of the plea and "there is obviously no interview to determine his level of understanding." APD Weisberg also argued that, "[t]he doctor did say that the low dose that he was receiving could have or would have had an impact on the sedation level of Mr. Mason. And, in fact, he would have been more sedated and this could have caused him certainly to be drowsy perhaps during the time of the plea itself." She concluded by arguing that "Mason insists in his testimony that he was not fit. That he did not understand. And that his plea was not given freely and voluntarily. Based on that, your Honor, we would ask you to grant our motion."

¶ 38    Contrary to Mason's arguments, the record shows that although the circuit court did not mention *Krankel*, or its requirements, it conducted an adequate preliminary inquiry into Mason's allegations of ineffective assistance of counsel. *Cf. People v. Dean*, 2012 IL App (2d) 110505 (noting although the circuit court did not expressly indicate that it was conducting a *Krankel* inquiry, the court was in fact conducting such an inquiry, and noting that there was no requirement that the court expressly so state); *People v. Gabrys*, 2013 IL App (3d) 110912, ¶ 23 (finding that after the court's inquiry pursuant to *Krankel*, the court's denial of the motion to withdraw indicated that it felt no further action was necessary on defendant's allegations of

17

ineffective assistance). Nor was the court required to appoint new counsel prior to its preliminary investigation of Mason's ineffectiveness claim. See *People v. Allen*, 391 Ill. App. 3d 412 (2009) (there is no *per se* rule that a trial court is required to appoint new counsel when defendant files a *pro se* post-trial motion alleging ineffective assistance of counsel, but the court is required to conduct a preliminary inquiry to determine if the defendant's allegations warrant new counsel).

¶ 39    In its preliminary investigation, the court allowed Mason to discuss his allegations that APD Weisberg failed to listen or take action when he told her he was on medication and failed to request a psychological evaluation prior to his plea. The court then listened to APD Weisberg's recitation of the events leading up to Mason's plea. The court was aware of Dr. Echevarria's testimony that Mason was fit to stand trial at the time of his plea and was capable of knowingly entering a plea of guilty. The court was also able to use its own knowledge and observations of counsel's performance at the time of the plea, as well as during the proceedings on the motion to withdraw the plea, to assess Mason's claim. The court recalled inquiring with defense counsel whether there were any problems communicating. Mason asked specific questions about his sentence and clarified with the court that he would be serving three years of "parole," not house arrest. The court stated, "It was never any bona fide doubt of this defendant's fitness in my mind", stating further that Mason was "completely 100 percent in touch with reality." The court noted that neither party sought a BCX at that time. The court also noted, as did defense counsel, that precedent established that taking medication for a mental illness does not in and of itself equate to bona fide doubt of fitness to stand trial.

¶ 40    With respect to the merits of Mason's claim, Mason contradicted himself when he testified that he was not competent at the plea hearing because he was so medicated that he did not know what he was doing and did not remember the plea. Yet, he explained to the court that

on the date of the plea, he told APD Weisberg he was on medication, but she did not listen to him, that it was APD Weisberg's decision to plead guilty, not his, and that he did not want to plead guilty. He also recounted that the prosecution had offered him six years imprisonment in exchange for his plea. His testimony that he didn't remember the plea hearing because he was heavily medicated is belied by his vivid recall of the details of what transpired at the hearing. In addition, we note that Mason's decision to plead guilty on July 26, 2018, did not occur in a vacuum. Rather, at the immediately prior hearing on July 10, 2018, Mason indicated he wanted a plea offer from the State and the State made a tentative offer, another factor undermining his contention that he didn't understand what he was doing when he pled guilty two weeks later.

¶ 41    Considering the exchange in its entirety, the record shows that the trial court conducted an adequate inquiry into Mason's ineffectiveness allegations. And after hearing from Mason and APD Weisberg, along with relying on its own knowledge and observations, the court properly determined Mason's ineffectiveness claim lacked merit and did not warrant further investigation.

¶ 42    Mason next argues that APD Weisberg's facially valid Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)) certificate is rebutted by the record. He argues that despite her certifying otherwise, APD Weisberg failed to comply with Rule 604(d) in three ways: (a) it was questionable whether she actually consulted with him on his *pro se* motion; (b) she failed to properly amend his *pro se* motion to include an ineffective assistance of counsel claim; and (c) she failed to address the timeliness of his *pro se* motion as raised by the court. The State responds that Mason's argument lacks merit because the 604(d) certification that was filed, in conjunction with the record, shows that APD Weisberg complied with all of requirements of Rule 604(d). We agree.

¶ 43    Rule 604(d) sets forth the procedure governing a defendant's appeal from a judgment

entered upon a guilty plea. *In re H.L.*, 2015 IL 118529, ¶ 7. Rule 604(d) requires counsel representing a defendant on a motion to reconsider sentence to certify the following:

> "[T]he attorney has consulted with the defendant either by mail or in person to ascertain defendant's contentions of error in the sentence [and] the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 44    "[C]ounsel must strictly comply with 'each of the provisions of Rule 604(d).' " *People v. Gorss*, 2022 IL 126464, ¶ 19 (quoting *People v. Janes*, 158 Ill. 2d 27, 33 (1994)). "[A] facially valid Rule 604(d) certificate may be refuted by the record." *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 37. However, "to prevail on such a claim, a defendant must actually show the record refutes the certificate." *People v. Higgins*, 2023 IL App (4th) 220837, ¶ 53. Where defense counsel files a facially valid Rule 604(d) certificate and the defendant claims on appeal that his counsel failed to make necessary amendments to defendant's posttrial motion, the defendant must present evidence in the record to rebut the certification. See *Curtis*, 2021 IL App (4th) 190658, ¶ 41. We review *de novo* whether counsel strictly complied with the provisions of Rule 604(d). *Gorss*, 2022 IL 126464, ¶ 10.

¶ 45    The record shows that APD Weisberg filed a Rule 604(d) certificate on September 5, 2019, wherein she stated that she: (1) she consulted with Mason in person, by mail, by phone, or by electronic means to ascertain his contentions of error in entering the plea of guilty and in his sentence, (2) she examined the trial court file and report of proceedings of the plea and sentence, and (3) she made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings. Insofar as Mason urges us to disregard the properly filed certificate,

Mason's arguments are refuted by the record.

¶ 46    Mason's first claim that it is "questionable at best" that APD Weisberg consulted with him is refuted by the record. The record shows that on October 5, 2018, APD Weisberg notified the court that she spoke to Mason and clarified with him that he wanted to withdraw his plea, despite the fact that he titled his *pro se* motion as a motion to reduce his sentence. When asked, Mason confirmed to the court that he wanted to recharacterize his motion as such. On November 19, 2018, APD Weisberg informed the court that she spoke to Mason and requested a continuance to secure his medical records and court file. On February 6, 2019, counsel requested a BCX to determine Mason's fitness at his plea. After receiving the BCX report from Forensic Clinical Services, which reported that Mason was mentally fit to stand trial when he accepted his plea, APD Weisberg filed her Rule 604(d) certificate and motion to withdraw his plea. It is clear from the record that APD Weisberg consulted with Mason and complied with Rule 604(d).

¶ 47    Mason points to his conversation with the court during the hearing on his motion to withdraw, wherein he complained that counsel "did no visits in 2018, in 2019, since [he'd] been in division 6 or division 10" as support for his claim that APD Weisberg did not consult with him. At the hearing, APD Weisberg acknowledged that she had not made visits to the jail prior to Mason's plea because trial preparation was delayed pending a plea offer. However, this does not establish that counsel never consulted or spoke to Mason prior to filing her certificate pursuant to Rule 604(d) certificate.

¶ 48    Mason also contends APD Weisberg failed to properly amend his motion to withdraw his guilty plea to include an ineffective assistance of counsel claim in violation of Rule 604(d). However, Mason only alleged that APD Weisberg was ineffective at the conclusion of his testimony at the hearing on his motion to withdraw his guilty plea, when he informed the court

that he wanted "to relieve [APD Weisberg] from her duties. I would like to relieve her from her duties" based on ineffective assistance of counsel. It is unclear how APD Weisberg would have known prior to that moment that Mason deemed her ineffective. There is no evidence in the record that Mason raised this specific issue with APD Weisberg prior to her filing the amended motion. His argument, that it is "hard to believe" that he did not raise this issue with APD Weisberg beforehand, is speculative. Hence, we find that this argument does not undermine APD Weisberg's compliance with Rule 604(d).

¶ 49　　Mason also argues that APD Weisberg's failure to advance any argument in support of his motion to withdraw his guilty plea shows that APD Weisberg violated Rule 604(d). Contrary to his argument, the record shows APD Weisberg did amend the motion to correct any defects in the prior pleadings. In his *pro se* motion for reduction in sentence, he argued, in part, reasonable doubt and that the charges against him were excessive due to his background and then stated "including my mental illness Biplor (sic)." APD Weisberg amended that motion, providing the court with a procedural summary of the case; the results of Dr. Echevarria's BCX, wherein he opined that Mason was fit to stand trial at the time of his plea; outlined Mason's disagreement with Dr. Echevarria's findings; and argued that Mason wished and should be permitted to withdraw his plea of guilty. APD Weisberg attached to her motion the plea transcript, Mason's pro se motion and Dr. Echevarria's letter. Mason has failed to identify what other evidence APD Weisberg should have included that would have further supported his claim.

¶ 50　　Mason's reliance on *People v. Bridges*, 2017 IL App (2d) 150718, and *People v. Cline*, 2023 IL App (4th) 220471-U, is unavailing. In *Bridges*, the defendant pled guilty to aggravated battery with a firearm. *Id.* ¶ 1. He later filed a *pro se* motion to withdraw his guilty plea, arguing that counsel was ineffective and he was not mentally competent to enter a plea agreement. *Id.* ¶

2. The *pro se* motion was supported by an affidavit, which included the allegation that the defendant had been subject to coercion. *Id*. Counsel filed an amended motion, alleging the defendant's plea was under duress and he had not been properly medicated for his bipolar and attention-deficit/hyperactivity disorder at the time of the plea. *Id*. The amended motion was not supported by an affidavit. *Id*. The defendant was not present at a status hearing or when the trial court heard and denied his motion. *Id*. ¶ 4.

¶ 51    On appeal, we concluded that although counsel added new allegations to the defendant's motion, counsel failed to support those allegations with an affidavit. *Id*. ¶ 9. Moreover, we found that counsel failed to present the defendant's testimony or any evidence to support the motion. *Id*. In addition, we found the defendant's hearing was inadequate stating, "A hearing on a motion to withdraw a defendant's guilty plea must be more than a charade performed only to allow an appeal to proceed." *Id*. ¶ 10.

¶ 52    In *Cline*, 2023 IL App (4th) 220471-U, the defendant pled guilty to one count of being an armed habitual criminal and one count of theft in two separate cases. *Id*. ¶¶ 5-6. The State dropped a total of eight additional charges in both cases and dismissed three other pending cases in their entirety in exchange for his plea. *Id*. He received consecutive sentences of 10 years for being an armed habitual criminal and 4 years for theft. Under truth-in-sentencing provisions, the armed habitual criminal sentence was required to be served at 85%, while the sentence for theft was required to be served at 50%. *Id*. ¶ 7.

¶ 53    With the assistance of plea counsel, the defendant filed a motion to withdraw his guilty plea, arguing that he was not aware of the requirement that he serve his first sentence at 85% and did not contemplate this requirement when he pled guilty. *Id*. ¶ 8. Plea counsel withdrew and was replaced by a new attorney. Post-plea counsel did not make any amendments to the motion filed

by plea counsel, nor did he attach any affidavits in support of the defendant's claim or present evidence at the hearing on the motion to withdraw. *Id*. ¶ 15. On appeal from the trial court's denial of the motion to withdraw plea, this court agreed with the defendant that post-plea counsel failed to strictly comply with Rule 604(d), explaining that counsel,

> "failed to provide any legally recognized basis for defendant to withdraw his guilty plea, such as defendant would not have pled guilty if he was correctly advised as to truth-in-sentencing or, alternatively, that [plea counsel] provided ineffective assistance of counsel by either (1) failing to properly advise him as to truth-in-sentencing or (2) incorrectly advising him as to truth-in-sentencing. This failure was further compounded by [postplea counsel] not calling defendant or [plea counsel] as witnesses at the hearing on defendant's motion." *Id*. ¶¶ 18, 22.

¶ 54 *Bridges* and *Cline* are inapposite. Here, the record shows that counsel attached the plea transcript that included Mason's reference to his mental illness and medications, the results of his BCX, and his *pro se* motion, where Mason referenced his mental illness. Furthermore, Mason was present and testified at the hearing on the motion to withdraw his guilty plea. APD Weisberg argued in support of the motion to withdraw, cross-examined Dr. Echevarria regarding his findings, and presented Mason's testimony. Unlike *Bridges* and *Cline*, counsel here strictly complied with Rule 604(d).

¶ 55 Mason also claims that counsel violated Rule 604(d) when she failed to address the potential untimeliness issue of his *pro se* motion in her amended motion and did not attach any affidavits addressing when Mason mailed the motion, as the court noted it was two days late and outside the 30-day time period for filing. We need not address this claim as this issue has already been resolved in Mason's favor on remand. See *People v. Mason*, 2022 IL App (1st) 200387-U, ¶

31.

¶ 56    Finally, Mason argues that APD Weisberg was ineffective or that she labored under a conflict of interest because she failed to properly amend Mason's motion to withdraw his guilty plea and failed to withdraw as appointed counsel after Mason criticized her performance.

¶ 57    When faced with challenges to trial counsel's effectiveness, we generally apply the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted in Illinois in by *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel under Strickland, a defendant must show that (1) counsel's performance was deficient and (2) counsel's actions resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687; *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Under the first prong, a defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness. *Evans*, 209 Ill. 2d at 220. Under the second prong, prejudice is shown where there is a reasonable probability that the result would have been different but for counsel's alleged deficiency. *Id*. Failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

¶ 58    Mason argues that APD Weisberg failed to properly amend his motion to withdraw his guilty plea with respect to his argument that APD Weisberg failed to strictly comply with Rule 604(d). For the reasons previously discussed, the record shows APD Weisberg properly amended his motion and strictly complied with Rule 604(d). As a result, Mason cannot establish that APD Weisberg was ineffective in this regard.

¶ 59    Mason also argues that APD Weisberg was ineffective because she labored under a conflict of interest at the hearing on Mason's motion to withdraw his guilty plea and had a duty to withdraw once he criticized her professional judgment. We disagree.

¶ 60   Conflict-free representation means that counsel's assistance to the client is "not diluted by conflicting interests or inconsistent obligations." (Internal quotation marks omitted.) *People v. Yost*, 2021 IL 126187, ¶ 36. A conflict-of-interest claim is a specific form of an ineffective-assistance claim, where the defendant is arguing that a conflict rendered counsel's performance substandard and that counsel's substandard performance prejudiced the defendant. *In re Br. M.*, 2021 IL 125969, ¶ 44. Unlike a traditional *Strickland* ineffective-assistance claim, when claiming conflict of interest, a defendant is not required to show that the outcome of a proceeding was affected; it requires a showing only that counsel's performance was adversely affected by the conflict. *People v. Austin M.,* 2012 IL 111194, ¶ 82 ("In actual conflict situations the accused need not prove prejudice in that the conflict contributed to the conviction, but it is necessary to establish that an actual conflict of interest adversely affected the lawyer's performance."). We review *de novo* whether counsel labored under a conflict of interest. *People v. Garcia*, 2018 IL App (5th) 150363, ¶ 26.

¶ 61   There are two types of conflicts of interest: *per se* and actual. *Green*, 2020 IL 125005, ¶ 20. A *per se* conflict of interest does not require a defendant to establish that counsel's performance was affected by the conflict. *People v. Hernandez*, 231 Ill. 2d 134, 143 (2008). When a *per se* conflict exists, automatic reversal of the criminal conviction is required unless the defendant waived the right to conflict-free counsel. *Yost*, 2021 IL 126187, ¶ 39 (citing *Green*, 2020 IL 125005, ¶ 24). "Generally, a *per se* conflict arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.*

¶ 62   Mason argues that a *per se* conflict of interest arose when APD Weisberg failed to withdraw after he alleged her ineffectiveness at the post-plea hearing. Illinois case law currently

recognizes only three categories of *per se* conflicts of interest: "(1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *Id*. ¶ 66; *Hernandez*, 231 Ill. 2d at 143. This case does not involve any of the three circumstances under which Illinois law has found a *per se* conflict of interest, nor does Mason allege that one of these three circumstances existed here. As such, we find that defense counsel did not harbor a *per se* conflict of interest.

¶ 63    Mason also argues that APD Weisberg suffered from an actual conflict of interest. If an asserted conflict falls outside of what is considered a *per se* conflict, a defendant must show an actual conflict of interest; that is, they must show prejudice in that counsel's performance was adversely affected by a conflict. See *Yost*, 2021 IL 126187, ¶ 66; *People v. Green*, 2020 IL 125005, ¶¶ 24, 38. "To establish an actual conflict, a defendant must do more than proffer speculative allegations and conclusory statements." *People v. Zirko*, 2021 IL App (1st) 162956, ¶ 22.

¶ 64    Mason argues that an actual conflict of interest arose when, instead of making a closing argument on the motion to withdraw his guilty plea, APD Weisberg defended her actions to the court. Mason claims that her failure to advocate for him illuminates the conflict she labored under, ultimately depriving him of effective assistance of counsel on his motion to withdraw his guilty plea.

¶ 65    Mason's *pro se* motion for reduction of sentence did not contain a claim that counsel was ineffective. Mason's motion to withdraw his plea did not contain a claim of ineffective assistance of counsel. As previously discussed, Mason made an oral complaint about counsel's performance

during the hearing on the motion to withdraw. At this point, a *Krankel* inquiry was triggered, which was separate from the issues raised in Mason's motion to withdraw his guilty plea. The court conducted a preliminary inquiry into Mason's allegations, and APD Weisberg responded to the allegations, reminding the court of what transpired on the dates leading up to Mason's plea, the discussions she had with Mason prior to taking his plea, and her observations at that time that Mason was making a free and voluntary plea. After the preliminary *Krankel* inquiry, the court did not appoint new counsel because the underlying claim of ineffective assistance had no merit. At that point, argument on Mason's motion to withdraw his guilty plea commenced. During argument, APD Weisberg highlighted that Dr. Echevarria's interview with Mason occurred a year after his plea, that the medications Mason was taking at the time of his plea could have had a sedative effect, and that Mason testified that he did not understand the proceedings. APD Weisberg's explanation to the court regarding Mason's allegations focused on her performance prior to Mason's plea and did not undermine her ability to effectively advocate for Mason on his motion to withdraw his guilty plea. At no point during these proceedings did an actual conflict arise.

¶ 66    Mason's reliance on *People v. Willis*, 134 Ill. App. 3d 123, 131 (1985), is unavailing. There, the defendant filed a *pro se* motion to withdraw his guilty plea and motion for appointment of counsel. His assistant public defender filed an amended motion to withdraw the plea, noting that defendant had alleged that counsel was ineffective at the plea hearing because the defendant didn't understand what happened on the date of the plea due to the medication he was taking, and counsel allowed the State to formulate a sentence based on an incorrect rap sheet. Defense counsel represented the defendant at the hearing on the motions, where the defendant asked his counsel several questions regarding an incorrect "rap sheet" that had not

been clarified before he entered his plea. Counsel responded to the questions. The defendant then testified that his counsel told him to accept the plea offer because, based on his criminal record, the trial court would be justified in imposing a greater sentence. The trial court denied the motions.

¶ 67    On appeal, the defendant argued that he was entitled to a new hearing because he was represented by the same attorney against whom he asserted a claim of ineffective assistance. In finding a *per se* conflict of interest on that basis, we stated that the need to appoint other counsel "should have been glaringly apparent during the course of the hearing," and the "issue raised was one which required preparation and presentation of evidence" to develop certain facts. *Id*. at 133.

¶ 68    Willis is distinguishable for two reasons. First, *Willis* predates the Illinois Supreme Court's decision in *Hernandez*, 231 Ill. 2d at 143, which clearly limited the circumstances of what constitutes a *per se* conflict of interest, none of which is applicable here. Second, as previously discussed, Mason did not make an ineffective assistance of counsel claim in his motion for reduction of sentence, nor was one included in his motion to withdraw his guilty plea. Unlike counsel in *Willis*, APD Weisberg had no way of knowing that Mason would raise this claim at the conclusion of his testimony at the hearing on the motion to withdraw his plea and therefore had no reason to withdraw.

¶ 69    This case is also distinguishable from *People v. Salamie*, 2023 IL App (2d) 220312, which Mason cited in his motion for leave to cite supplemental authority. In *Salamie*, the defendant argued that the denial of her motion to withdraw her guilty plea should be vacated because her counsel was operating under an actual conflict of interest on her motion to withdraw. In essence, counsel argued that he was ineffective in that he provided the defendant with incorrect legal advice, and absent that incorrect advice, the defendant would not have accepted

the State's plea offer. We found that counsel's conflict of arguing his own ineffectiveness adversely affected his performance because he was reluctant to cast blame on himself or anyone else and failed to include relevant evidence in the form of email conversations between himself and the defendant. *Id*. ¶ 69-7. Therefore, we remanded for the appointment of conflict-free counsel and new postplea proceedings.

¶ 70    Unlike counsel in *Salamie*, APD Weisberg did not operate under an actual conflict of interest. There is no evidence here that APD Weisberg provided Mason with incorrect legal advice on which Mason relied in choosing to plead guilty. If anything, the record shows that Mason was actively seeking a plea offer on both the July 10 and July 26 court dates. Furthermore, as previously discussed, APD Weisberg's performance was not affected. She zealously argued Mason's motion to withdraw his guilty plea. Accordingly, we find that APD Weisberg did not labor under an actual conflict of interest. Consequently, Mason's claim of ineffective assistance of counsel based on a conflict of interest fails.

¶ 71                                III. CONCLUSION

¶ 72    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 73    Affirmed.